**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHARLES C. HARRIS, THOMAS CLIFFORD,      )
DAVID R. DESROSIERS, RICHARD M. EVENS,      )
WILLIAM S. McLAUGHLIN, JR., THOMAS M. MURPHY,      )
JAMES POWERS, GARY PREVOST, ROBERT ROZELL,      )
TERRY L. VANARNUM, JR., KEVIN WHIBLE,      )
PAUL J. WOLFE, DAVID J. COWLES, and      )
JOHN W. WEAVER,      )
                   Plaintiffs,      )
       -against-      )
     )
FINCH, PRUYN & COMPANY, INC.,      )
THE RETIREMENT BOARD OF FINCH, PRUYN & CO., INC.,      )
RICHARD J. CAROTA, DAVID P. MANNY,      )
LAURIER J. LAVIGNE, JEFFREY W. BENWAY,      )
and JOHN E. LEVANDOSKY,      )
                   Defendants.      )

**DEFENDANTS' LOCAL RULE 7.1(a)(3) STATEMENT OF MATERIAL FACTS**

Civil Action No. 05-CV-951 (FJS/RFT)

---

Defendants Finch, Pruyn & Company, Inc. ("Finch" or "Company"), The Retirement Board of Finch, Pruyn & Co., Inc., Richard J. Carota, David P. Manny, Laurier J. Lavigne, Jeffrey W. Benway and John E. Levandosky by their attorneys, Reed Smith, LLP and the Law Offices of Michael T. Wallender, file this Local Rule 7.1(a)(3) Statement of Material Facts in support of Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(3) of the Local Rules of Practice for the United States District Court for the Northern District of New York and respectfully submit that the following are material facts as to which there is no genuine issue to be tried.

## I. The Defendants

1. Defendant Finch Pruyn & Company, Inc. is a domestic business incorporated under the laws of the State of New York with its principal place of business and offices located at 1 Glen Street, Glens Falls, New York. Compl. ¶ 19.

2.      Defendant Richard J. Carota is the Chairman, President and Chief Executive Officer of Finch. November 3, 2005 Affidavit of John E. Levandosky ¶ 4 (hereinafter, "JEL Aff. ¶ ___").

3.      Defendant David P. Manny is the Executive Vice President, Secretary and Treasurer of Finch. JEL Aff. ¶ 3.

4.      Defendant Laurier J. Lavigne was the Company's Treasurer until his retirement from Finch effective October 1, 2002. JEL Aff. ¶ 4; January ___, 2006 Supplemental Affidavit of John E. Levandosky ¶ 11 (hereinafter, "JEL Supp. Aff. ¶ ___").

5.      Defendant Jeffrey W. Benway is the Personnel Director of Finch. JEL Aff. ¶ 4.

6.      Defendant John E. Levandosky is the Benefits Manager of Finch and is responsible for administering Finch's employee benefit programs. JEL Aff. ¶ 1.

7.      Defendant The Retirement Board of Finch, Pruyn & Co., Inc. ("Retirement Board") is the named plan administrator of Finch's defined benefit pension plan. JEL Aff. ¶ 4.

8.      As of August 1997, the Retirement Board had three members, namely, Mr. Manny, Mr. Lavigne and Mr. Levandosky. JEL Aff. ¶ 4.

9.      Mr. Lavigne resigned from the Retirement Board effective August 31, 2002. JEL Supp. Aff. ¶ 11.

10.     After Mr. Lavigne resigned from the Retirement Board, Mr. Benway assumed his position and became a member of the Retirement Board effective September 1, 2002. JEL Aff. ¶ 4; JEL Supp. Aff. ¶ 11 and Supplemental Exhibit 4 (hereinafter, "Supp. Exhibit ___").

11.     Mr. Carota has never been a member of the Retirement Board. JEL Aff. ¶ 4.

## II.   Plaintiffs' Employment With Finch As Hourly Employees.

12.     Plaintiff Charles C. Harris ("Harris") was employed by Defendant Finch as an hourly employee from March 24, 1969 until June 1, 2002. JEL Aff. ¶15(i).

13.     Mr. Harris retired from the Company effective June 1, 2002. JEL Aff. ¶15(i).

14.     Plaintiff Thomas Clifford ("Clifford") was employed by Defendant Finch as an hourly employee from October 16, 1989 to June 17, 2002. JEL Aff. ¶15(ii).

15.     Mr. Clifford resigned from the Company effective June 16, 2002. JEL Aff. ¶15(ii).

16.     Mr. Clifford returned to work for Finch in April 2004 and is a current employee of the Company. JEL Aff. ¶15(ii).

17.     Although initially enrolled in the Company's 401(k) Plan, Mr. Clifford chose not to re-enroll in it upon his return to the Company in April 2004. JEL Aff. ¶15(ii).

18.     Plaintiff David R. Desrosiers ("Desrosiers") was employed by Defendant Finch as an hourly employee from May 29, 1997 to June 17, 2002. JEL Aff. ¶15(iii).

19.     Mr. Desrosiers resigned from the Company effective June 17, 2002. JEL Aff. ¶15(iii).

20.     Plaintiff Richard M. Evens ("Evens") was employed by Defendant Finch as an hourly employee from December 21, 1971 until February 1, 2003. JEL Aff. ¶15(iv).

21.     Mr. Evens retired from the Company effective February 1, 2003 because of a total disability. JEL Aff. ¶15(iv) and JEL Aff. Exhibit N.

22.     Mr. Evens provided a letter from his doctor dated December 3, 2002, which confirmed that Mr. Evens was totally disabled. JEL Aff. Exhibit M.

23.     Plaintiff William S. McLaughlin ("McLaughlin") was employed by Defendant Finch as an hourly employee from February 9, 1976 until January 1, 2002. JEL Aff. ¶15(v).

24.     Mr. McLaughlin retired from the Company effective January 1, 2002. JEL Aff. ¶15(v) and JEL Aff. Exhibit P.

25.     Plaintiff Thomas M. Murphy ("Murphy") was employed by Defendant Finch as an hourly employee from May 1, 1973 to May 1, 2002. JEL Aff. ¶15(vi).

26.     Mr. Murphy retired from the Company effective May 1, 2002. JEL Aff. ¶15(vi) and JEL Aff. Exhibit R.

27.     Plaintiff James Powers ("Powers") was employed by Defendant Finch as an hourly employee from April 18, 1996 to March 6, 2002. JEL Aff. ¶15(vii).

28.     Mr. Powers resigned from the Company effective March 6, 2002. JEL Aff. ¶15(vii) and JEL Aff. Exhibit T.

29.     Plaintiff Gary Prevost ("Prevost") was employed by Defendant Finch as an hourly employee from February 3, 1964 to January 1, 2002. JEL Aff. ¶15(viii).

30.     Mr. Prevost retired from the Company effective January 1, 2002. JEL Aff. ¶15(viii) and JEL Aff. Exhibit U.

31.     Plaintiff Robert Rozell ("Rozell") was employed by Defendant Finch as an hourly employee from August 13, 1976 to  May 1, 2002. JEL Aff. ¶15(ix).

32.     Mr. Rozell retired from the Company effective May 1, 2002. JEL Aff. ¶15(ix) and JEL Aff. Exhibit V.

33.     Plaintiff Terry L. VanArnum ("VanArnum") was employed by Defendant Finch as an hourly employee from April 1, 1993 to June 5, 2002. JEL Aff. ¶15(x).

34.     Mr. VanArnum resigned from the Company effective June 5, 2002. JEL Aff.
¶15(x).

35.     Plaintiff Kevin Whible ("Whible") was employed by Defendant Finch as an
hourly employee from October 12, 1988 to May 22, 2002. JEL Aff. ¶15(xi).

36.     Mr. Whible resigned from the Company effective May 22, 2002. JEL Aff.
¶15(xi).

37.     Plaintiff Paul J. Wolfe ("Wolfe") was employed by Defendant Finch as an hourly
employee from February 14, 1966 to January 1, 2002. JEL Aff. ¶15(xii).

38.     Mr. Wolfe retired from the Company effective January 1, 2002. JEL Aff. ¶15(xii).

39.     Plaintiff David J. Cowles ("Cowles") was employed by Defendant Finch as an
hourly employee from October 7, 1996 to June 4, 2002. JEL Aff. ¶15(xiii).

40.     Mr. Cowles resigned from the Company effective June 4, 2002. JEL Aff.
¶15(xiii) and JEL Aff. Exhibit Z.

41.     Mr. Cowles informed the Company that he had obtained other employment and
would not return to Finch. JEL Aff. ¶15(xiii).

42.     Plaintiff John W. Weaver ("Weaver") was employed by Defendant Finch as an
hourly employee from May 5, 1971 to January 1, 2002. JEL Aff. ¶15(xiv).

43.     Mr. Weaver retired from the Company effective January 1, 2002. JEL Aff.
¶15(xiv) and JEL Aff. Exhibit AA.

44.     Mr. Weaver later returned to work at Finch as a temporary trainer. JEL Aff.
¶ 15(xiv).

45.     Each of the Plaintiffs was represented by a union for collective bargaining
purposes. JEL Aff. ¶ 2.

### III.   The 401(k) Plan of Finch, Pruyn & Company, Inc.

46.    In accordance with Article 13(R) of the respective collective bargaining agreements between Defendant Finch and the seven local unions each representing a separate unit of hourly employees, Finch established a 401(k) plan for the hourly employees in 1997 (the "Plan"). JEL Aff. ¶¶2, 3, 8.

47.    The Plan was initially instituted pursuant to a Plan Agreement (the "Plan Agreement") between Finch and Putnam Fiduciary Trust Company ("Putnam"), the Trustee of the 401(k) Plan. JEL Aff. Exhibit A.

48.    The Plan Agreement consisted of a menu of various plan provisions offered by Putnam from which the Company could choose various options for its Plan. JEL Aff. ¶ 3 and Exhibit A.

49.    A true and correct copy of the Plan Agreement is attached to Mr. Levandosky's Affidavit as Exhibit A. JEL Aff. Exhibit A.

50.    The terms and conditions of the Plan are set forth in the Putnam Basic Plan Document #07 ("Plan Document"). JEL Aff. ¶ 8 and JEL Aff. Exhibit B.

51.    A true and correct copy of the Putnam Basic Plan Document #07 is attached to Mr. Levandosky's Affidavit as Exhibit B. JEL Aff. Exhibit B.

52.    The terms and conditions of the Plan are summarized in the Summary Plan Description ("SPD"). JEL Aff. ¶ 8 and Exhibit D.

53.    A true and correct copy of the Summary Plan Description ("SPD") is attached to Mr. Levandosky's Affidavit as Exhibit D. JEL Aff. Exhibit D.

54.    The Plan became effective on October 1, 1997. JEL Aff. ¶8.

55.    Each of the Plaintiffs enrolled in the Plan. JEL Aff. Exhibits H, I, K, O, Q, T-AA.

A.     **The Plan's Fiduciaries**

56.     In the Plan Agreement between Finch and Putnam, the Retirement Board was named as the initial Plan Administrator.  JEL Aff. Exhibit A at p. 23.

57.     Article 15.1 of the Plan Document provides that "the Plan Administrator's duties and responsibilities may be delegated to a person appointed by the Employer or a Committee established by the Employer for that purpose . . . ."  JEL Aff. Exhibit B at Art. 15.1; Compl. Exhibit B.

58.     On August 30, 1997, the Company's Board of Directors adopted a Resolution to govern future operation of the Plan.  JEL Aff. ¶ 5; Compl. Exhibit A.

59.     Pursuant to the Resolution, the Company adopted the Plan, which became effective October 1, 1997.  Compl. Exhibit A.

60.     Also pursuant to the Resolution, the Company changed its initial designation of the Retirement Board as the Plan Administrator and appointed non-officers, "Jeffrey W. Benway, Personnel Director, and John E. Levandosky, Benefits Manager, to represent the Plan as Plan Administrator and named fiduciary of the Plan."  JEL Aff. ¶ 5; Compl. Exhibit A.

61.     The Resolution directed "Richard J. Carota, Chairman, President & C.E.O., David P. Manny, Executive Vice President & Secretary and Laurier J. Lavigne, Treasurer, to represent this Corporation . . ." with respect to Plan operations.  Compl. Exhibit A.

62.     The Resolution was executed by Messrs. Carota, Manny and Lavigne as officers of the Corporation and by Messrs. Benway and Levandosky as "plan administrator."  Compl. Exhibit A.

63.     As plan administrators, Messrs. Benway and Levandosky's duties and responsibilities are governed by Article 15 of the Plan Document.  JEL Aff. ¶ 6 and Exhibit B.

64.    Article 15.1 of the Plan Agreement provides as follows:

> To the extent permitted under applicable law, the Plan Administrator shall have the sole authority to enforce the terms hereof on behalf of any and all persons having or claiming any interest under the Plan, and shall be responsible for the operation of the Plan in accordance with its terms. The Plan Administrator shall have discretionary authority to determine all questions arising out of the administration, interpretation and application of the Plan, all of which determinations shall be conclusive and binding on all persons. The Plan Administrator, in carrying out its responsibilities under the Plan, may rely upon the written opinions of its counsel and on certificates of physicians. Subject to the provisions of the Plan and applicable law, the Plan Administrator shall have no liability to any person as a result of any action taken or omitted hereunder by the Plan Administrator.

JEL Aff. Exhibit B at Article 15.1; see also Compl. Exhibit B.

65.    Under Article 15.2, the Plan Administrator determines the eligibility for claims in the Plan's claims procedures. JEL Aff. Exhibit B at Article 15.2.; see also Compl. Exhibit B.

**B.    Availability of the Terms and Conditions of the Plan to Plaintiffs.**

66.    Hourly employees who were employed as of January 28, 1998 were provided a copy of the SPD with their pay check issued on January 28, 1998. JEL Aff. ¶ 8; JEL Supp. Aff. ¶¶ 6-7 and Supp. Exhibit 2.

67.    With the SPD, hourly employees employed as of January 28, 1998 were provided with a copy of a memorandum which stated that the SPD:

> **provides information on** plan participation, contributions, distribution of benefits, investment of plan assets, **withdrawals and loans**. Also included in the document is information on claims procedures and the legal rights of Plan Participants.

JEL Supp. Aff. ¶¶ 6-7 and Supp. Exhibit 2 (emphasis added).

68.    Each of the Plaintiffs was employed with the Company as of January 28, 1998. JEL Aff. ¶ 15(i) – (xiv).

69.    Hourly employees who joined the Company after January 28, 1998 were provided with a copy of the SPD when they became eligible to participate in the Plan.  JEL Aff. ¶ 8.

70.    The SPD, in a question-and-answer format, highlighted and summarized various features of the Plan, including the availability of loans and hardship withdrawals under the Plan. JEL Aff. Exhibit D.

71.    As to the availability of hardship withdrawals, the SPD provides:

> **22. Is any portion of my Account available to me while I am still working for the Employer?**
>
> You may withdraw from your Elective Deferral Account . . . if you demonstrate to the Plan Administrator that you are experiencing financial need.  Hardship distributions can be made only for uninsured medical expenses, purchase of your principal residence, payment of the next 12 months of post-secondary education for you or a member of your immediate family, or to prevent the loss of your residence. . . .

JEL Aff. Exhibit D at 9 (emphasis in original).

72.    As to the availability of loans under the Plan, the SPD, in relevant part, provides:

> **23. Are loans available to Participants under the Plan?**
>
> You may borrow from your Account, subject to the Loan Program established by your Employer and the following requirements:
>
> The total amount of all loans may not exceed the lesser of:
>
> (a) one-half of your vested Account balance; or
>
> (b) $50,000 (reduced by the highest outstanding loan balance for all loans during the one-year period ending on the day before the date this loan becomes effective.
>
> *        *        *

JEL Aff. Exhibit D at 9-10 (emphasis in original).

73.    Prior to the October 1, 1997 effective date of the Plan, the Company held informal meetings with officers of the Unions representing Finch's hourly employees, as well as the

employees themselves, to inform Union officials and employees about the facts and features of the Plan. JEL Aff. ¶ 7; JEL Supp. Aff. ¶¶ 3-4 and Supp. Exhibit 1.

74. At the informal meetings with Union officials and hourly employees, Mr. Levandosky discussed, *inter alia,* situations where a participant's contribution could be withdrawn, utilizing an outline of the 401(k) Plan Facts and Features to discuss loans available, hardship withdrawals for special needs, and withdrawals at termination of employment. JEL Aff. ¶ 8 and Exhibit C.

75. A true and correct copy of the outline of the 401(k) Plan Facts and Features prepared and utilized by Benefits Manager John Levandosky at the informal meetings with Union officials and employees is attached to Mr. Levandosky's Affidavit as Exhibit C. JEL Aff. Exhibit C.

76. A copy of the Plan was available to each employee at the Company's offices. JEL Aff. ¶ 8.

77. Employees enrolling in the Plan were provided an enrollment package that contained, among other items, a brochure informing them that information concerning the Plan was always available by telephone through Putnam's "On Call" telephone service or via the internet on Putnam's website. JEL Aff. ¶ 8.

**C.     Loans and Withdrawals Available Under the Plan.**

78. Under the Company's 401(k) Plan, employees participating in the Plan can obtain loans through which they can borrow up to fifty percent of their account balance for any reason. JEL Aff. ¶ 9 and Exhibit B at Article 12.5, Exhibit D at 9-10.

79. Participants can apply for loans directly over the internet or by telephone through Putnam. JEL Aff. ¶ 10; JEL Supp. Aff. ¶ 9 and Supp. Exhibit 3.

80.     The Company's 401(k) Plan also permits employees participating in the Plan to obtain "Hardship Withdrawals." JEL Aff. ¶ 9 and Exhibit B at Article 12.2, Exhibit D at 9-10.

81.     Hardship withdrawals are available only for certain financial needs, including: (i) expenses for medical care; (ii) purchase of a principal residence; (iii) payment of tuition and related educational fees and room and board expenses for the upcoming 12 months of post-secondary education for the Participant, his or her spouse, children or dependents; and (iv) payments necessary prevent eviction. JEL Aff. Exhibit B at Article 12.2, Exhibit D at 9-10.

82.     To obtain a hardship withdrawal, participants must meet certain conditions, including, but not limited to, the following: (i) the participant must have obtained all other nontaxable loans and all other distributions available through the Plan and (ii) the requested withdrawal cannot exceed the amount of the participant's financial need. JEL Aff. Exhibit B at Article 12.2, Exhibit D at 9-10.

83.     In June 2001, the Company mailed a copy of the memorandum describing improvements to the loan program available under the Company's 401(k) Plan to all hourly employees at the addresses listed in their personnel records. JEL Supp. Aff. ¶¶ 8-10 and Supp. Exhibit 3.

### D.     Plaintiffs' Experience with Plan Loans and Withdrawals.

84.     Between October 1, 1997 and September 29, 2005, including during a six-month strike conducted by the seven unions representing different bargaining units of hourly employees at the Company's Glens Falls plant which ended on November 24, 2001, the plan administrator approved over 150 loans to hourly employees. JEL Aff. ¶¶ 10, 12 and Exhibits E, F.

85.     Between October 1, 1997 and September 29, 2005, including during the six-month strike conducted by the seven unions representing different bargaining units of hourly

employees ending on November 24, 2001, the plan administrator approved 32 hardship withdrawals to hourly employees. JEL Aff. ¶¶ 11, 12 and Exhibit F.

86.　　During the course of his employment with Finch, Plaintiff Thomas Clifford withdrew money from his 401(k) account in the form of a loan on three separate occasions in June 1999, February 2000 and September 2000. JEL Aff. ¶¶ 10, 15(ii) and Exhibit E (chart listing loans issued), Exhibit J (loan disposition forms).

87.　　Mr. Clifford also withdrew money from his 401(k) account in the form of a hardship withdrawal in July 2001 to prevent eviction or foreclosure from his primary residence. JEL Aff. ¶¶ 11, 15(ii) and Exhibit F (chart listing hardship withdrawals), Exhibit J (hardship distribution form).

88.　　During the course of his employment with Finch, Plaintiff David Desrosiers obtained two loans from his 401(k) account in January 2000 and April 2001. JEL Aff. ¶¶ 10, 15(iii) and Exhibit E.

89.　　During the course of his employment with Finch, Plaintiff William McLaughlin borrowed against his 401(k) account and obtained two loans in December 1998 and August 2000. JEL Aff. ¶¶ 10, 15(v) and Exhibit E.

90.　　During the course of his employment with Finch, on or about July 16, 2001, Plaintiff Terry Van Arnum obtained a loan from his 401(k) account. JEL Aff. ¶ 10, 15(x) and Exhibit E.

91.　　During the course of his employment with Finch, in or about September 1999, Plaintiff David Cowles obtained a loan from his 401(k) account. JEL Aff. ¶¶ 10, 15(xiii) and Exhibit E.

## IV.    Plaintiffs' 401(k) Plan Distributions.

92.    Both during and after the six-month strike at the Glens Falls plant which ended on November 24, 2001, a number of employees either retired or resigned to take other employment. JEL Aff. ¶ 13.

93.    Employees who wanted to retire under the Company's defined benefit pension plan could request an estimate of their retirement benefits from the Company's Benefits Office. JEL Aff. ¶ 13.

94.    Upon a request for an estimate of retirement benefits, the Company's Benefits Office provided estimates of the employee's benefits in the form of various annuities and in the form of a lump-sum distribution.  JEL Aff. ¶ 13.

95.    Most retirees took their retirement pension distribution as a lump sum distribution.  JEL Aff. ¶ 13.

96.    Retirees could direct the distribution to be "rolled over" to an IRA for tax reasons. JEL Aff. ¶ 13.

97.    Employees who retired (or resigned) also could request a distribution of the funds in their 401(k) accounts.  JEL Aff. ¶ 13.

98.    The 401(k) distribution usually amounted to a smaller figure than an employee's pension lump-sum distribution.  JEL Aff. ¶ 13.

99.    Like the pension distribution, an employee could request that his or her 401(k) Plan distribution be provided to him or her in the form of an annuity or a lump-sum distribution, or rolled over into an IRA.  JEL Aff. ¶ 13.

100.    Like those employees who wished to retire, employees who opted to resign from the Company, contacted the Company's Benefits Office seeking a distribution of 401(k) monies. JEL Aff. ¶ 13.

101.    Each of the Plaintiffs contacted the Company's Benefits Office seeking to retire or terminate their employment with Finch.  JEL Aff. ¶ 13.

102.    Mr. Levandosky signed all of Plaintiffs' requests for 401(k) distributions as the authorized Plan Representative.  JEL Aff. ¶ 16.

103.    Mr. Levandosky did not discuss the Plaintiffs' 401(k) plan distributions or any of his 401(k) discussions with Plaintiffs with Mr. Carota, Mr. Manny or Mr. Lavigne.  JEL Aff. ¶ 17.

A.    **Plaintiff Harris**

104.    Upon his retirement effective June 1, 2002, Plaintiff Charles Harris elected a lump-sum distribution of his pension benefits and that his pension amount of $194,504.07 be paid into a "rollover IRA."  JEL Aff. Exhibit G.

105.    On or about May 2, 2002, Mr. Harris also elected a lump-sum distribution of the $4,043.38 in his 401(k) account and requested that it be paid into a rollover IRA.  JEL Aff. Exhibit H.

106.    Mr. Harris noted his reason for termination as "Retirement" on his 401(k) Benefit Distribution Form.  JEL Aff. Exhibit H.

B.    **Plaintiff Clifford**

107.    Upon his resignation on or about June 25, 2002, Plaintiff Thomas Clifford requested an immediate lump-sum distribution of the $2,235.73 in his 401(k) account.  JEL Aff. Exhibit I.

## C.    Plaintiff Desrosiers

108.    Upon his resignation effective June 17, 2002, Plaintiff David Desrosiers requested a lump-sum distribution of both his 401(k) account and his pension benefits in the amounts of approximately $4,000 and $4,496.11, respectively.  JEL Aff. ¶ 15(iii) and Exhibits K, L.

## D.    Plaintiff Evens

109.    Upon his retirement due to a disability effective February 1, 2003, Plaintiff Richard Evens elected a lump-sum distribution of his pension benefits in the amount of $194,084.75 and requested that it be paid to a "rollover IRA."  JEL Aff. Exhibit N.

110.    Mr. Evens also elected to have his 401(k) account balance of approximately $3,600 paid to a rollover IRA.  JEL Aff. ¶ 15(iv) and Exhibit O.

## E.    Plaintiff McLaughlin

111.    Upon his retirement effective January 1, 2002, Plaintiff William McLaughlin elected a lump-sum distribution of his pension benefits, which amounted to $78,626.05.  JEL Aff. Exhibit P.

112.    Mr. McLaughlin requested that his pension benefits be paid to him in two checks, with $40,000 ($8,000 was withheld for taxes) paid directly to him and the remaining $38,626.05 rolled over to an IRA.  JEL Aff. Exhibit P.

113.    Mr. McLaughlin requested that his 401(k) balance of approximately $8,700 be paid to a rollover IRA.  JEL Aff. Exhibit Q.

## F.    Plaintiff Murphy

114.    Upon his retirement effective May 1, 2002, Plaintiff Thomas Murphy elected a lump-sum distribution of his pension benefits and directed that $135,000 of the $151,161.04 of his pension be deposited in a rollover IRA.  JEL Aff. ¶ 15(v) and Exhibits R, S.

115.     Mr. Murphy requested a direct payment to him of the remainder of his pension benefits ($16,161 (less 20% tax withholding)).  JEL Aff. Exhibit S.

116.     Mr. Murphy also requested a direct lump-sum payment of the $20,910 in his 401(k) account.  JEL Aff. Exhibit R.

### G.     Plaintiff Powers

117.     Upon his resignation from the Company effective March 6, 2002, Plaintiff James Powers requested an immediate lump-sum distribution of the funds in his 401(k) account.  JEL Aff. Exhibit T.

### H.     Plaintiff Prevost

118.     Upon his retirement from the Company effective January 1, 2002, Plaintiff Gary Prevost elected to "rollover" $208,878 from the pension plan to an IRA.  JEL Aff. Exhibit U.

119.     Mr. Prevost elected a lump-sum distribution of his 401(k) account, which amounted to approximately $8,300.  JEL Aff. ¶ 15(viii).

### I.     Plaintiff Rozell

120.     Upon his retirement from the Company effective May 1, 2002, Plaintiff Robert Rozell elected a lump-sum distribution of his pension benefits and directed that the benefits amounting to $87,689 be rolled over to an IRA.  JEL Aff. Exhibit V.

121.     Mr. Rozell elected a lump-sum distribution of the $8,851 in his 401(k) account.  JEL Aff. Exhibit V.

### J.     Plaintiff Van Arnum

122.     Upon his resignation from the Company effective June 5, 2002, Plaintiff Terry Van Arnum requested a lump-sum distribution of the funds in his 401(k) account.  JEL Aff. Exhibit W.

**K.**   **Plaintiff Whible**

123.   Upon his resignation from the Company effective May 22, 2002, Plaintiff Kevin Whible requested a lump-sum distribution of the balance in his 401(k) account. JEL Aff. Exhibit X.

**L.**   **Plaintiff Wolfe**

124.   Upon his retirement from Finch effective January 1, 2002, Plaintiff Paul Wolfe elected a lump-sum distribution of his pension benefits and directed that those benefits, which amounted to $211,252, be rolled over to an IRA. JEL Aff. Exhibit Y.

125.   Mr. Wolfe requested a lump-sum distribution of his 401(k) balance of $7,289. JEL Aff. Exhibit Y.

**M.**   **Plaintiff Cowles**

126.   Upon his resignation from the Company effective June 4, 2002, Plaintiff David Cowles requested a lump-sum distribution of his 401(k) funds. JEL Aff. ¶ 15(xiii).

**N.**   **Plaintiff Weaver**

127.   Upon retiring from the Company effective January 1, 2002, Plaintiff John Weaver requested a lump-sum payment of $188,532 from the Company's pension plan. JEL Aff. ¶ 15(xiv).

128.   Mr. Weaver also received a lump-sum distribution of $26,170 from his 401(k) account. JEL Aff ¶ 15(xiv) and Exhibit AA.

129.   Mr. Weaver requested that both his pension and 401(k) distributions be rolled over to an IRA account. JEL Aff ¶ 15(xiv) and Exhibit AA.

Respectfully submitted,

Michael T. Wallender
Bar Roll #102780
Law Offices of Michael T. Wallender
90 State Street, Suite 1501
Albany, NY 12207
Telephone:  518-463-2045
Fax: (518) 463-2088
E-mail:  mtwlaw@post.harvard.edu

Peter D. Post
Bar Roll #513538
Shweta Gupta
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
412-288-3070/4054

January 10, 2006                                        Attorneys for Defendants