**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------

CHARLES C. HARRIS, THOMAS CLIFFORD, )
DAVID R. DESROSIERS, RICHARD M. EVENS, )
WILLIAM S. McLAUGHLIN, JR., THOMAS M. MURPHY, )
JAMES POWERS, GARY PREVOST, ROBERT ROZELL, )
TERRY L. VANARNUM, JR., KEVIN WHIBLE, )
PAUL J. WOLFE, DAVID J. COWLES, and )
JOHN W. WEAVER, )
                                )
                Plaintiffs, )
                                 )
        -against- )       Civil Action No. 05-951
                                 )       FJS/RFT
FINCH, PRUYN & COMPANY, INC., )
THE RETIREMENT BOARD OF FINCH, PRUYN & CO., INC., )
RICHARD J. CAROTA, DAVID P. MANNY, )
LAURIER J. LAVIGNE, JEFFREY W. BENWAY, )
and JOHN E. LEVANDOSKY, )
                                  )
               Defendants. )

--------------------------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' SUMMARY JUDGMENT MOTION

BLITMAN & KING LLP
Attorneys for Plaintiffs
Office and Post Office Address
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-1415
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
saminer@bklawyers.com

Of Counsel:
James R. LaVaute, Esq.
Stephanie A. Miner, Esq.
Daniel E. Kornfeld, Esq.

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE...............................................................................1

STATEMENT OF FACTS...................................................................................1

ARGUMENT.......................................................................................................7

POINT I ...............................................................................................................7

      DEFENDANTS HAVE NOT MET THE HIGH STANDARD
      NECESSARY FOR SUMMARY JUDGMENT....................................7

        A.    Defendants Have Not Established They are Entitled to
              Judgment as a Matter of Law. ...................................................7

        B.    Plaintiffs Do Not Have to Plead the Elements of Fraud to State
              Fiduciary Breach Claims. ...........................................................9

POINT II ...........................................................................................................10

      DEFENDANTS HAVE NOT ESTABLISHED PLAINTIFFS'
      CLAIMS ARE TIME-BARRED ..........................................................10

        A.    Defendants Must Prove that Plaintiffs Knew
              About Plan Misrepresentations. ...............................................11

        B.    Defendants' Arguments in Support of Their Timeliness
               Defenses are Without Merit. .....................................................13

        C.    Plaintiffs' ERISA Section 510 Claims were also Timely filed.................16

POINT III ..........................................................................................................17

      PLAINTIFFS HAVE STANDING .....................................................17

POINT IV ..........................................................................................................21

      THE COMPLAINT ADEQUATELY ALLEGES DEFENDANTS
      CAROTA, MANNY, AND LAVIGNE'S FIDUCIARY STATUS ..................21

        A.    Carota, Manny, and Lavigne's Oversight of Plan Operations Creates
              Fiduciary Status ........................................................................22

        B.    Co-Fiduciary Liability Can be Established for Failure to Monitor ...............24

CONCLUSION ..................................................................................................25

## STATEMENT OF THE CASE

The matter before the Court is defendants' summary judgment motion, which seeks dismissal of plaintiffs' claims of breaches of fiduciary duty. Defendants' summary judgment motion is based on the alleged "(i) untimeliness of Plaintiffs' claims under ERISA sections 413 and 510, and Plaintiffs' failure to meet the requirements of Fed. R. Civ. P. 9(b) with respect to fraud or concealment allegations; (ii) Plaintiffs' lack of standing to sue under ERISA section 502(a)(1) through (a)(3); and (iii) Plaintiffs' failure to state a claim upon which relief can be granted against certain of the Defendants." Defendants' Memorandum of Law in Support of Motion to Dismiss, filed November 4, 2005, p. 3-4. This Memorandum of Law is submitted in opposition to defendants' summary judgment motion.

## STATEMENT OF FACTS

Each of the plaintiffs was an active employee of defendant Finch, Pruyn & Company, Inc. ("Finch Pruyn"), located in Glens Falls, New York, until June 2001. By virtue of that employment, they enrolled as participants in the Hourly 401(k) Plan of Finch, Pruyn & Company, Inc. ("Plan"). Finch Pruyn did not match employee contributions and, thus, the Plan consisted solely of the participant's contributions. As participants, many of the plaintiffs received documents from Finch Pruyn discussing various terms and conditions of the Plan. Finch Pruyn had an "open-door policy" when it came to answering questions about employee benefits and, in fact, it was common practice for an employee to consult the benefits department if he had questions. See Plaintiffs' Affidavits[1] ¶ 5.

In June 2001, each of the plaintiffs commenced his participation in a strike against Finch Pruyn. During the strike Finch Pruyn replaced approximately 500 workers. When the strike ended in November 2001, the employer and the unions negotiated a "Recall Procedure" establishing a procedure for recalling

---

[1] Affidavits of Plaintiffs Harris, Clifford, Desrosiers, McLaughlin, Murphy, Powers, Prevost, Rozell, VanArnum, Whible, Wolfe and Cowles. (Hereinafter Harris Aff. ___, Clifford Aff. ___, Desrosiers Aff. ___, McLaughlin Aff. ___, Murphy Aff. ___, Powers Aff. ___, Prevost Aff. ___, Rozell Aff. ___, VanArnum Aff. ___, Whible Aff. ___, Wolfe Aff. ___, and Cowles Aff. ___.)

unreinstated strikers to positions when vacancies arose. When a permanent vacancy arose, Finch Pruyn filled that position by recalling either the unreinstated striker who was senior incumbent in the position or the unreinstated striker with the most seniority. Harris Aff., Exhibit "A", Recall Procedure. Due to Finch Pruyn's permanent replacements, there were only 60 permanent vacancies to which strikers could return. None of the plaintiffs were recalled and they were, therefore, "unreinstated strikers." Each of the plaintiffs was on the "Recall List" kept by Finch Pruyn to recall unreinstated strikers when jobs came open. With the number of openings so few, the recall of employees was slow and uncertain.

While each of the plaintiffs waited to be recalled, he did not have any other employment. A number of them sought employment, but were unsuccessful, in large part due to their status as unreinstated strikers. Plaintiff Harris learned prospective employers were leery of hiring him for fear that he would leave the new job as soon as he was recalled. As they waited to be recalled, plaintiffs began to suffer significant financial burdens. They had each been out of work for at least six months without a paycheck and, in many cases, without medical insurance. Their savings and income dwindled to the point where they were having trouble paying bills and were desperate for money. Importantly, each of them was unsure of when, if ever, he was going to be recalled. Each of the plaintiffs decided to contact the benefits office to see how he could access money. Among other things, each of the plaintiffs was unsure of how his status as an "unreinstated striker" impacted his right to benefits. For example, pursuant to the Summary Plan Description ("SPD"), participants were entitled to loans if they were "still working for the Employer" and the availability of loans was subject to a "Loan Program established by [the] Employer." SPD, attached to Levandosky Aff., Exhibit "D" at pp. 9-10. See generally Plaintiffs' Affidavits.

The Plan is an ERISA pension plan. The Retirement Board initially represented the Plan as Plan Administrator. Plaintiffs need an opportunity to conduct discovery to ascertain the material fact of

2

whether the Retirement Board continued to exercise discretionary authority over the Plan. Additionally, plaintiffs also need an opportunity to conduct discovery to ascertain the material fact of whether there are multiple "Retirement Boards" with any discretionary authority over the Plan. See Memorandum dated August 21, 2002, referring to "Retirement Boards," attached as Exhibit "4" to Levandosky Supplemental Aff. ¶ 10. Moreover, Defendant Richard J. Carota has the power to appoint members to the Retirement Board and, therefore, may have discretionary authority over the Plan by appointing Plan fiduciaries. Id.

Defendant John Levandosky is Finch Pruyn's benefits manager and the Plan's Plan Administrator, as is Defendant Jeffrey Benway. Defendants Richard J. Carota, David P. Manny and Laurier J. Lavigne had authority over the Plan when they "represented the corporation with respect to Plan operations." Corporate Resolution naming defendants Carota, Manny, and Lavigne "to represent the Corporation with respect to Plan operations," attached as Exhibit A to Complaint. Plaintiffs need an opportunity to conduct discovery to ascertain the material fact of whether these defendants exercised any discretionary authority over the Plan when they represented the corporation with respect to Plan operations. Moreover, plaintiffs also need an opportunity to conduct discovery to ascertain whether Defendant Carota exercised discretionary authority over the Plan by appointing members to the Retirement Boards. Plaintiffs also need an opportunity to conduct discovery to ascertain the material fact of who specifically delegated the Plan Administrator's authority: Finch Pruyn as the Employer or "committee established by the Employer" and, if the latter, who is on the committee. Plan Document, Article 15.1 stating that Plan Administrator's duties may be delegated to a person appointed by the Employer or a committee established by the employer, attached as Exhibit "B" to Levandosky Aff. and paragraph 1, 6 of Levandosky Aff. admitting Levandosky is a plan administrator.

3

## Pension Plan Provisions

The SPD states that "[i]f you have questions about your Plan, you should contact the Plan Administrator for more information." SPD p. 12, Exhibit "D" attached to Levandosky Aff..  The SPD states that participants may receive a loan from their Plan account "subject to the Loan Program established by your employer."   The SPD also states that loan repayments "will be made through payroll deduction."  SPD p. 9,  Exhibit "D" attached to Levandosky Aff..  The Plan Document states that applications for loans

> shall be approved or denied by the Plan Administrator on the basis of its
> assessment of the borrower's ability to collateralize and repay the loan, as
> revealed in the loan application.

Plan Document Article 12.5(b), p. 68, Exhibit "B" attached to Levandosky Aff..

A participant may also "withdraw from [his] Elected Deferral Account (excluding any earnings) if [he] demonstrate to the Plan Administrator that [he is] experiencing financial need."  SPD p. 9, Exhibit "D" attached to Levandosky Aff..  The Plan Document further states that

> a hardship withdrawal will be made to a participant only upon satisfaction
> of the following conditions: [t]he participant has obtained all non-taxable
> loans . . . available to him from all plans. . ..

Plan Document Article 12.2 (e)(1), p. 67, Exhibit "B" attached to Levandosky Aff..

Loans should have been available to all participants.  Plaintiffs' status as unreinstated strikers should not have precluded them from obtaining a loan from their account.  If loans were not available to unreinstated strikers, then hardship withdrawals were available to them if they could establish to the Plan Administrator financial need, such as uninsured medical expenses, payment of the next 12 months of post-secondary education expenses, purchase of a principal residence or to prevent the loss of his primary residence.

Each of the plaintiffs spoke with Defendant Levandosky[2] about his Plan benefits.  In direct contrast to the terms of the Plan, Defendant Levandosky communicated to each of the Plaintiffs that he would have to resign or retire to access monies in his Plan account.  <u>See</u> Plaintiffs' Affs.  In fact, Plaintiff Cowles submitted a written resignation stating he was resigning to "pull my 401(k)."  When Plaintiffs Clifford and Rozell asked about taking out a loan Defendant Levandosky said that it was not possible and they had to resign.  Clifford Aff. ¶ 13; Rozell Aff. ¶ 13.  Plaintiffs McLaughlin, Whible, and VanArnum asked specifically how to access money and Defendant Levandosky stated to each he had to sever his employment relationship with Finch Pruyn.  McLaughlin Aff. ¶ 6; Whible Aff. ¶ 11; Van Arnum Aff. 10. When talking with Plaintiff Harris' wife, Karen, he communicated that Plaintiff Harris would not be eligible for a loan because he was not actively working and, therefore, could not pay it back.  He never mentioned a hardship withdrawal.  Karen Harris Aff. ¶ 7.  Plaintiff Powers specifically said he needed money to pay his mortgage and Defendant Levandosky told him he had to resign.  Powers Aff. ¶ 10. Similarly, Plaintiffs Murphy, Prevost, Wolfe and Evens each needed money and Defendant Levandosky never mentioned the possibility of a loan or a hardship withdrawal.  He did this even when he knew each of the plaintiffs had been out of work for a significant period of time and was on the Recall List.  Murphy Aff. ¶ 11; Prevost Aff. ¶ 11; Wolfe Aff. ¶ 10; Evens Aff. ¶¶ 13-14.

Each of the plaintiffs waited for as long as he financially could to be recalled.  After a significant period of time without an income, each was forced, based on Mr. Levandosky's breach of fiduciary duty, to retire or resign in order to receive benefits from the Plan.  While a number of plaintiffs had in the past exercised loan options, and one had exercised a hardship withdrawal, at the time they terminated their employment with Finch Pruyn the plaintiffs did not know that as an "unreinstated striker," they had these benefits.  <u>See generally</u> Plaintiffs Affidavits ¶¶ 13, 18, 15, 12, 16.  Moreover, the SPD states that participants should "[c]ontact your Plan Administrator for more information" about loans.  SPD p. 10

---

[2]   Except Plaintiff Harris; Levandosky communicated with his Harris's wife, Karen.  Karen Harris Aff. ¶ 7.

Exhibit "D" attached to Levandosky Aff.. Defendant Levandosky was a fiduciary and the resource to be consulted on plan benefits. Indeed, as he acknowledges, he is the "Benefits Manager and am responsible for administering Finch's employee benefits programs," including the Plan. Levandosky Supplemental Aff. ¶1. If he said that there were no options available to plaintiffs, then it was not unreasonable for plaintiffs to believe that their status as unreinstated strikers impacted those options. Obviously, plaintiffs' status as "unreinstated strikers" made the ability to repay a loan an issue, and payroll deduction as a repayment method was impossible because they were not on Finch Pruyn's payroll. Also, if plaintiffs would have had to establish to the Plan Administrator financial need for a hardship withdrawal, but Levandosky never raised it as a possibility, then it was not unreasonable to believe it was not available.

After they resigned from Finch Pruyn and received their distribution, none of the plaintiffs, except one[3], had any contact with Finch Pruyn, Mr. Levandosky, or any other representatives of the Plan. They each received their distribution, paid bills, sought other employment, and never thought about the Plan provisions. It is likely that each of the plaintiffs would have been recalled to work at Finch, Pruyn had they been able to wait for a longer period of time because they knew of others in similar positions on the Recall List who were eventually recalled. See generally Plaintiffs' Affidavits ¶¶ 20, 15, 17, 14, 18.

Sometime in approximately March or April of 2005, plaintiffs were asked by union members to attend a meeting to discuss the reasons behind their separation from Finch Pruyn. They were told they may have been misled about their options for receiving their 401(k) monies. At a meeting on April 6, 2005, they each learned for the first time that unreinstated strikers did not have to resign or retire to access monies from their Plan accounts. Prior to the meeting, they did not know Mr. Levandosky gave

---

[3] Plaintiff Clifford had contact with Finch two years after his resignation when he was hired as new employee. Clifford Aff. ¶ 17.

them incorrect information.  If offered reinstatement to their pre-strike positions at Finch Pruyn, each would accept reinstatement and return.  See generally Plaintiffs' Affidavits ¶¶ 23, 25, 22, 20, 19.

**ARGUMENT**

**POINT I**

**DEFENDANTS HAVE NOT MET THE HIGH STANDARD
NECESSARY FOR SUMMARY JUDGMENT.**

Defendants' motion for summary judgment must be denied because issues of material fact exist. Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of a law.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  The Court must "view the evidence in the light most favorable to the non-moving party and . . .may grant summary judgment only when 'no reasonable trier of fact could find in favor of the non-moving party.'"  Id. at 79 (quoting Lunds, Inc. v. Chemical Bank, 870 F.2d 840, 844 (2d Cir. 1999)).  As will be made clear in this memorandum, defendants have not met this high standard and, thus, summary judgment must be denied. Additionally, contrary to defendants' argument, plaintiffs do not have to plead with particularity to state fiduciary breach claims.

**A.    Defendants Have Not Established They Are Entitled to Judgment as a Matter of Law.**

Summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." N.B. Foster Co. v. American Piles, Inc., 138 F.3d 81 (2d Cir. 1998).  A party resisting summary judgment must show a dispute of material fact in light of the substantive law.  "Only

7

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty to Lobby, Inc., 477 U.S. 242, 248 (1986). In ERISA fiduciary breach cases, summary judgment motions are often denied because of the complexity and fact-specific inquiry involved in resolving such cases. See e.g., I.B.E.W. Local No. 241 Pen. Plan v. First Allmerica Finan. Life Insur. Co., 354 F. Supp. 2d 203, 205 (N.D.N.Y. 2005) (denying motion for summary judgment on ERISA fiduciary breach claim because of dispute of material fact); Parks v. Financial Fed. Sav. Bank, 345 F. Supp. 2d 889, 896 (W. D. Tenn. 2004) (denying motion for summary judgment on the ERISA fiduciary breach claim concerning alleged misstatements of the terms of waiting period related to disability benefit plan because of dispute of material fact).

Defendants argue they are entitled to summary judgment based on the (1) alleged untimeliness of plaintiffs' claims under ERISA §§413 and 510; (2) plaintiffs lack standing to sue under ERISA §502(a)(1) through (a)(3); and (3) plaintiffs' failure to state a claim against defendants Carota, Manny and Lavigne. As will be discussed in more detail in this memorandum, plaintiffs have submitted affidavits stating they did not have actual knowledge of the fiduciary breach until it was brought to their attention at a meeting on April 6, 2005. Accordingly, the matter is not time-barred. These affidavits also establish that "but for" the fiduciaries misrepresentation, they would be participants in the plan. Thus, plaintiffs have standing. Finally, defendants Carota, Manny, and Lavigne "represent[ed] the Corporation with respect to Plan operations." See Complaint Exhibit "A", Corporate Resolution stating, inter alia, defendants Carota, Manny, and Lavigne had authority to represent the corporation with respect to Plan Operations. As such, these defendants were fiduciaries[4] to the extent they exercised any discretionary

---

[4] As will be made clear, Plaintiffs need an opportunity to conduct discovery to ascertain the material facts regarding the extent of defendants Carota, Manny, and Lavigne's fiduciary status including defendant Carota's exercise discretionary authority over the Plan by appointing members to the Retirement Boards, whether one of the multiple "Retirement Boards" has discretionary authority over the Plan, and who appoints the fiduciaries to the Plan. [See Exhibit 4, August 21, 2002, Memorandum from Richard J. Carota to JW Benway, appointing him to "Retirement Boards," attached to Levandosky Supplemental Aff.]

authority over Plan operations.  Thus, plaintiffs have established grounds of fiduciary status against these defendants and, therefore, stated claims against them for fiduciary breach.  Accordingly, defendants' summary judgment motion must be denied on the grounds that there are genuine disputes of material facts and plaintiffs are entitled to discovery.

**B.     Plaintiffs Do Not Have to Plead the Elements of Fraud to State Fiduciary Breach Claims.**

Defendants also argue that plaintiffs' claims are "too generic and vague to meet the specific pleading requirements of Federal Rule of Civil Procedure 9(b)."  Def. Memorandum, p. 7.  In contrast, it is well-established that "Rule 9(b) is not applicable to breach of fiduciary duty . . . claims; it only applies to claims sounding in fraud." Zucker v. Katz, 708 F.Supp. 525, 530 (S.D.N.Y. 1989); Bosio v. Norbay SEC, Inc., 599 F.Supp. 1563, 1570 (E.D.N.Y. 1985).  An ERISA fiduciary duty claim based on misrepresentations or failure to provide truthful information does not sound in fraud.  See Crowley v. Corning, Inc., 234 F.Supp. 2d 222, 230, 231 (W.D.N.Y. 2002) (allegations that plan fiduciary breached its duty by failing to provide truthful information to participants is fiduciary claim, not fraud claim, and not subject to requirements of Rule 9(b)).  ERISA breach of duty claims for misrepresentations to participants and beneficiaries are not based on the general duty to refrain from harming others, but rather on the affirmative duty to protect and serve plan participants with prudence and loyalty as set forth in the text of ERISA.  Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).  ERISA does not require that plaintiffs prove specific elements of a common-law claim for fraud as a predicate for asserting a breach of fiduciary duty.  To the extent that courts have treated fiduciary claims based on misrepresentations as fraud claims, they have been in error. See Crowley, 234 F.Supp. 2d at 230, 31; cf. Conch v. London, 63 F.3d 1493, 1502-03 (9th Cir. 1995).

Instead, Federal Rule of Civil Procedure 8 governs pleading requirements for fiduciary breach claims.  Schupak v. Florescue, 1993 U.S. Dist. LEXIS 9485 (S.D.N.Y. July 8, 1993).  The notice

pleading principles embodied in Rule 8 mandate that a complaint simply must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, supra; Swierkiewicz v. Sorena, N.A., 534 U.S. 506, 512 (2002).  In order to state a claim for a breach of fiduciary duty under ERISA, a plaintiff must allege (1) defendant was a fiduciary of an ERISA plan, who (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty.  In re AOL Time Warner, Inc., 2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. 2005).  Each cause of action in plaintiffs' complaint alleges facts which meet this liberal pleading standard.  See Complaint ¶¶22, 24, 26, 28, 30, 31, 118, 123, 128, 133, 138, 142-144, 148-150, 154-156, 161-165, 169, 173-175, 179, 180, 181, 185-187.  Thus, plaintiffs have met the standard necessary to state a claim for an ERISA fiduciary breach.

**POINT II**

**DEFENDANTS HAVE NOT ESTABLISHED
PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

Defendants' affirmative defenses concerning the ERISA statutes of limitations should be rejected because plaintiffs filed their Complaint within five (5) months of having "actual knowledge" that defendants provided incorrect and/or incomplete information about the Plan.  As described in more detail below, summary judgment is unavailable on the timeliness defenses because defendants failed to prove the "exclusion of a genuine fact issue that [plaintiffs] had actual knowledge of the facts necessary to understand that some claim existed" under ERISA before July 27, 2002.  See Maher v. Strachan Shipping Co., 68 F.3d 951, 955-57 (5th Cir. 1995)(reversing summary judgment order on ERISA fiduciary breach claims because parties disputed when plaintiffs had "actual knowledge" of the alleged misconduct).  See also Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1086-87 (7th Cir. 1992)(reversing summary judgment order on ERISA fiduciary breach claims because the "underlying facts are too complex" concerning the "actual knowledge" of the unlawful scheme for disposition without trial).

**A.      Defendants Must Prove that Plaintiffs Knew about Plan Misrepresentations.**

ERISA Section 413(2), 29 U.S.C. §1113(2), provides that an ERISA fiduciary breach action

must be commenced within "three years after the earliest date on which the plaintiff had actual

knowledge of the breach or violation."[5]  To trigger the statute of limitations period, a plaintiff must have

"actual knowledge of all material facts necessary to understand that some claim exists, which facts could

include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even

actual harm."  See Bona v. Barasch, 30 E.B.C. (BNA) 1874, 1886 (S.D.N.Y. 2003)(citations omitted).

See also Schultz v. Stoner, 308 F. Supp. 2d 289, 299 (S.D.N.Y. 2004)(denying motion for summary

judgment because the defendant "has failed to demonstrate that plaintiffs had actual knowledge of the

claimed breaches of fiduciary duty" because "the disclosure of a transaction that is not inherently a

statutory breach of fiduciary duty cannot communicate the existence of an underlying breach"); Farage

v. Johnson-McClean Technologies, Inc., 28 E.B.C. (BNA) 1973, 1978 (S.D.N.Y. 2002)(denying

summary judgment motion because of lack of evidence about "actual knowledge" and reasoning that

"defendants must show that plaintiffs knew not only of the relevant events that occurred, but also that

those events supported a claim for breach of fiduciary duty or violation under ERISA").

Moreover, while defendants concede that the "actual knowledge" standard is governed by the

Second Circuit's decision in Caputo v. Pfizer, 267 F.3d 181 (2d Cir. 2001), Def. Memorandum, p. 5,

defendants misstate the case's holding.  The plaintiffs in Caputo alleged that their employer mislead

them about a "Voluntary Separation Option" ("VSO") that was formally announced on November 11,

---

[5]      Alternatively, ERISA Section 413(1), 29 U.S.C. §1113(1), provides that an ERISA fiduciary breach action may be brought within six (6) years where a fiduciary "has breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment."  See Caputo v. Pfizer, Inc., 267 F.3d 181, 188-89 (2d Cir. 2001).  Because this case involves defendants' misrepresentations about Plan terms made after July 27, 1999 (six years before the commencement on July 27, 2005), defendants' affirmative defenses concerning the timeliness of the lawsuit could also be denied based on ERISA Section 413(1), 29 U.S.C. §1113(1).  If this Court determines that plaintiffs' claims are untimely under ERISA Section 413(2), 29 U.S.C. §1113(2), plaintiffs respectfully request an opportunity to supplement or amend the pleadings, if necessary, to show that their claims are timely under ERISA Section 413(1), 29 U.S.C. §1113(1).

1991. <u>Caputo</u>, 267 F.3d at 186.  In 1995, the <u>Caputo</u> plaintiffs learned facts as exposed in another

employee's case against this same employer involving the same misconduct, and they commenced their

action in 1996, or within three years of learning these facts. <u>Id.</u> at 187 (citing <u>Mullins v. Pfizer</u>, 147 F.

Supp. 2d 95 (D. Conn. 2001)).  The <u>Caputo</u> Court held that the action was timely because the plaintiffs

"did not have 'actual knowledge' of [their employer's] breach until they learned during the Mullins trial

in 1995 that [their employer] anticipated the offering of the 1991 VSO as early as the Spring of 1990;

and, therefore, it arguably misrepresented present facts when responding to plaintiffs' inquiries." <u>Id.</u> at

194.  The <u>Caputo</u> Court reasoned that:

> a plaintiff has "actual knowledge of the breach or violation" within the
> meaning of ERISA Section 413(2), when he has knowledge of all material
> facts necessary to <u>understand</u> that an ERISA fiduciary has breached his or
> her duty or otherwise violated the Act.
>
> * * *
>
> [A]n ERISA plaintiff cannot be said to have "actual knowledge of the
> breach or violation" until he has actual knowledge that his employer
> <u>misrepresented</u> a present fact or <u>failed to disclose</u> all material information
> known at the time of inquiry.

<u>Id.</u> at 193 (emphasis supplied)(citing <u>Brock v. Nellis</u>, 809 F.2d 753, 755 (11th Cir. 1987), for the

proposition that "it is not enough that [plaintiffs] had notice that something was awry; plaintiffs must

have had specific knowledge of the actual breach of duty upon which [they sued]" and <u>Gluck v. Unisys</u>

<u>Corp</u>, 960 F.2d 1168, 1177-78 (3d Cir. 1992), for the proposition that "constructive knowledge" is

insufficient, and the time begins to run with knowledge of facts "necessary to understand that some

claim exists").

Under the <u>Caputo</u> standard, defendants are not entitled to summary judgment because defendants

have not established that plaintiffs had "actual knowledge" of their entire ERISA fiduciary breach

claims prior to July 27, 2002.  <u>See</u> <u>e.g.</u>, <u>McConnell v. Costigan</u>, 2002 U.S. Dist. LEXIS 3279, *27-30

12

(S.D.N.Y. February 28, 2002)(denying summary judgment because material dispute of fact existed about "actual knowledge" and stating that "the layout of the reports themselves would not reveal to anyone but the most studious observer" whether the ERISA breaches occurred).[6] Most importantly, defendants have not proven that plaintiffs knew that defendants' misinformation about the Plan was, in fact, untrue before July 27, 2002.

Here, plaintiffs learned that defendants provided misinformation about the Plan during a union meeting on April 6, 2005. See e.g. Harris Aff., ¶¶18-23; Powers Aff., ¶¶12-17; VanArnum Aff., ¶¶12-17; Rozell Aff., ¶¶15-20; Cowles Aff., ¶¶13-18. Prior to this union meeting, plaintiffs did not know whether "unreinstated strikers" were required to resign or retire from Finch Pruyn in order to receive a loan or hardship withdrawal from the Plan. Id. Thus, plaintiffs commenced their lawsuit on July 27, 2005, which was within five (5) months of obtaining "actual knowledge" that the information provided by defendants about the Plan was false. Because plaintiffs obtained their "actual knowledge" of all the elements of their ERISA fiduciary breach claims after July 27, 2002, this Court should deny defendants' affirmative defenses concerning the ERISA statute of limitations.

**B.    Defendants' Arguments in Support of their Timeliness Defenses are Without Merit.**

As described in more detail above, ERISA's "actual knowledge" standard requires that defendants prove that, *inter alia*, plaintiffs knew that defendants' statements about the Plan were false before July 27, 2002. Defendants' only attempt to meet this burden is to contend that the alleged

---

[6]    Indeed, defendants are not entitled to summary judgment under ERISA's "actual knowledge" standard articulated before Caputo because of the dispute of material fact about when "actual knowledge" occurred. See e.g. Crimi v. Pas Industries, Inc., 1995 U.S. Dist. LEXIS 6180, *16-20 (S.D.N.Y. May 9, 1995)(denying summary judgment because "factual question" remained about "actual knowledge" of the alleged misconduct and stating that "[g]eneral knowledge of the transaction is not enough, rather knowledge must be of the facts underlying the breach, such as [defendants'] alleged failure to investigate" the transaction); Fechter v. Conn. Gen. Life Insur. Co., 798 F. Supp. 1120, 1126 (E. D. Pa. 1991)(finding that fiduciary breach claim did not accrue until plaintiffs discovered misconduct and stating that "actual knowledge is a high standard and unquestionably presents a question of fact to be reserved for the fact-finder"); Howard Electric, Inc. v. American Bank & Trust Co., 1990 U.S. Dist. LEXIS 7704, *32-42 (N. D. Ca. April 2, 1990)(denying motion for summary judgment concerning the ERISA fiduciary breach claims because the effect of one letter created a dispute of material fact about plaintiffs' "actual knowledge").

distribution of the Plan's summary plan description ("SPD") or other Plan documents satisfied the "actual knowledge" standard.  See e.g., Def. Memorandum, p. 7, n. 3 (stating that "Plaintiffs and the fiduciary had the same access to the same information," like the summary plan description).  As discussed below, defendants failed to fulfill their burden of proof as a matter of law or a matter of fact.

As a matter of law, the alleged distribution of Plan documents is not sufficient to prove "actual knowledge" under ERISA Section 413(2), 29 U.S.C. §1113(2).[7]  In Bona, supra, for example, the Court held that the plaintiff's possession of documents from the plan was not enough to satisfy ERISA's "actual knowledge" standard:

> Defendants have demonstrated only that plaintiffs could have examined tax forms detailing the fees paid for services provided to one plan.  Absent a showing that plaintiffs actually did examine those forms and learned of the transactions, the court cannot impute actual knowledge to them.

Bona, 30 E.B.C. at 1887.

As a matter of fact, the alleged distribution of Plan documents is insufficient because these documents are confusing about how Plan benefits apply to "unreinstated strikers."  See e.g., Levandosky Aff., Ex. "D", p. 9 (stating that loan repayments "will be made through payroll deduction" and stating that hardship withdrawal was only available upon satisfaction of all non-taxable loans available from all plans).  The plaintiffs testified that prior to April 6, 2005, they did not know what Plan benefits were available to "unreinstated strikers." See e.g. Harris Aff., ¶ 23; Powers Aff., ¶ 17; VanArnum Aff., ¶ 17; Rozell Aff., ¶ 20; Cowles Aff., ¶ 18.  Recognizing that the SPD does not end all uncertainty about benefits, the Plan specifically advises participants to "contact the Plan Administrator for more

---

[7]     See Meyer v. Berkshire Life Insur. Co., 128 F. Supp. 2d 831, 839-40 (D. Md. 2001)(examining documents relied upon by defendant and determining that they were neither "simple nor straightforward" such that by "themselves, they do not provide sufficient information for the court to conclude that [plaintiffs] had actual knowledge of the ERISA violations"); Connor v. Mid-South Insur. Agency, 943 F. Supp. 647, 653-54 (W. D. La. 1995)(denying defendant's affirmative defense concerning the limitations period because "[m]ere awareness of a particular event or set of facts later revealed as a breach of fiduciary duty is not actual knowledge of material facts which would make up each of the elements in a complex ERISA claim" and that although plaintiffs knew "many details of the stock sale," the "quality and quantity" of this knowledge did not meet "the stringent requirements of ERISA's actual knowledge test").

information." See e.g., Levandosky Aff., Ex. "D", p. 12.  Consequently, the alleged distribution of Plan documents does not prove that plaintiffs actually knew that defendants' statements about the Plan were false.

Additionally, defendants' reliance on Oechsner v. Connell Ltd. P'Ship, 283 F. Supp. 2d 926 (S.D.N.Y. 2003), is misplaced.  In Oechsner, it was clear on the face of the complaint that plaintiffs had notice of the alleged breach and sued well outside of the statute of limitations period.  The Oechsner complaint contained specific allegations that: (a) in order to induce the plaintiffs to authorize a sale, the fiduciaries stated that employee benefit levels would be "substantially similar" after the sale; (b) three months after the sale was approved, defendants provided information which described a benefit package that was different from the one the plaintiffs believed they were promised; and (c) the plaintiffs commenced their litigation fifteen (15) years after receiving the subsequent benefit package information. See Oechsner, 283 F. Supp. 2d at 931-33.  Thus, the Oechsner case was time-barred because the complaint established plaintiffs' knowledge of the discrepancy between the promised level of benefits and the actual benefits long before they commenced the litigation.  See Oechsner, 283 F. Supp. 2d at 931-33.

Oechsner is, therefore, inapposite to the instant dispute because here, neither the Complaint nor defendants' affidavits establish that plaintiffs learned that defendants' misrepresentations about the Plan were false before July 27, 2002.  In fact, Plaintiffs did not learn that defendants' statements were false until April 6, 2005.  See e.g., Harris Aff., ¶¶18-23; Powers Aff., ¶¶12-17; VanArnum Aff., ¶¶12-17; Rozell Aff., ¶¶15-20; Cowles Aff., ¶¶13-18. Defendants' only effort to contradict this testimony is to assert that "Plaintiffs here had all the information necessary at the time of Mr. Levandosky's alleged benefit advice, to determine, by comparison to that information, whether Levandosky's advice was 'incomplete' or 'incorrect,'" See Def. Memorandum, p. 6.  Assuming arguendo that plaintiffs had the

15

Plan documents as defendants maintain, such possession is not enough to satisfy the "actual knowledge" standard as described above.  Unlike the <u>Oechsner</u> case, plaintiffs have not averred in the Complaint (and defendants have not proven with their affidavits) that plaintiffs actually knew about defendants' falsehoods before the limitations period began to run on July 27, 2002.

Defendants' reliance on <u>Oechsner</u> and their arguments about the timeliness defenses illustrate defendants' fundamental misunderstanding of the instant case.  At the time plaintiffs sought advice about the Plan from defendants, it was not incumbent on plaintiffs to check the information they received from defendants against Plan documents.  On the contrary, ERISA requires that fiduciaries answer questions from participants about the plan completely and accurately to explain how plan terms apply in situations faced by participants.  <u>See</u> <u>Becker v. Kodiak Retirement Income Plan</u>, 120 F.3d 5, 8-10 (2d Cir. 1997)(noting that plan documents cannot "anticipate every possible idiosyncratic contingency" making ERISA fiduciaries liable for providing "complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits").  Faulting plaintiffs for not catching defendants' misconduct as defendants urge would incorrectly turn the ERISA fiduciary requirements on their head.

**C.   Plaintiffs' ERISA Section 510 Claims were also Timely Filed.**

Similarly, defendants have not established that the claims of discrimination against plaintiffs for the purpose of interfering with their attainment of rights under ERISA and/or the Plan are time-barred. <u>See</u> Complaint ¶¶195-199.  As defendants recognize, Def. Memorandum p. 10, plaintiffs must commence an action for discrimination under ERISA Section 510 within two (2) years of <u>accrual</u>. <u>Sandberg v. KPMG Peat Marwick, LLP</u>, 111 F.3d, 331 (2d Cir. 1997) (analogizing to two year statute of limitations set forth in Section 120 of the New York Workers Compensation Law for claims brought under ERISA Section 510).  Accrual depends upon the participant's notice of the unlawful

discrimination.  See McCauley v. First Unum Life Insurance Company, 1998 U.S. Dist. LEXIS 18873,

*21 (S.D.N.Y. December 2, 1998) (citing Miles v. New York State Teamsters Conference Pension

Funds, 698 F.2d 593 (2d Cir. 1983), and Lawrence v. Consolidated Edison Company, 240 A.D.2d 871

(1997), for the proposition that the Section 510 limitation period "begins to run upon the beneficiary's

notice of the violation").[8]

At the time plaintiffs terminated their employment at Finch, Pruyn & Company, Inc., they did

not know that defendants provided them with incorrect and/or incomplete information to prevent

obtaining additional benefits from the Plan.  See e.g., Harris Aff., ¶¶18-23; Powers Aff., ¶¶12-17;

VanArnum Aff., ¶¶12-17; Rozell Aff., ¶¶15-20; Cowles Aff., ¶¶13-18.  Because they did not know that

defendants were misleading them, plaintiffs had no notice of the ERISA violations until April 6, 2005.

See McCauley, 1998 U.S. Dist LEXIS 18873, *20-21 (recognizing that claimant had no "notice" of

violation until he had "knowledge of the commission of the alleged unlawful practices" or when his

lawyer obtained the employer's claim file).  Because defendants did not establish that plaintiffs obtained

notice that defendants interfered with their rights prior to July 27, 2003, summary judgment is not

available to defendants on the Section 510 claims.

**POINT III**

**PLAINTIFFS HAVE STANDING.**

As former participants in an ERISA plan, plaintiffs are in ERISA's zone of interests and, thus,

have standing to bring a civil action pursuant to ERISA.  Plaintiffs have presented evidence that but for

Defendant Levandosky's misinformation, they would still be participants in the 401(k) plan.

---

[8]       See Williams v. American International Group, Inc., 29 E.B.C. (BNA) 1251, 1254-55 (S.D.N.Y. 2002)(noting that
ERISA cause of action accrues when there has been a repudiation by the fiduciary which is clear and made known to the
beneficiaries).  Accord Hoodack v. Int'l Bus. Mach., Inc., 202 F. Supp. 2d 109, 114 (S.D.N.Y. 2002)(stating "the statute of
limitations in ERISA actions begins to run upon the beneficiary's notice of the violation").

Accordingly, defendants' argument that plaintiffs' claims should be dismissed because they were not participants in an ERISA plan must be denied.

A participant or beneficiary in an ERISA plan may bring a civil action to remedy breaches of fiduciary duty.  29 U.S.C. §11302(a)(2).[9]  ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit from any type of employee benefit plan which covers employees of such employer."  29 U.S.C. §1002(7) (emphasis added).  Defendants contend that plaintiffs lack standing to bring the instant action because they were not participants in the plan at the time the litigation was commenced.  Def. Memorandum, p. 11.  In contrast to defendants' argument, "the Second Circuit has rejected a narrow interpretation of ERISA's standing requirement, noting that Congress' intent in enacting the statute was 'to remove jurisdictional and procedural obstacles which in the past appear to have hampered the enforcement of fiduciary responsibilities . . . or recovery of benefits due to participants."  Medoy v. Warnaco Employees Plan, 43 F. Supp. 2d 203 (S.D.N.Y. 1999); see also Gray v. Briggs, 1998 U.S. Dist. LEXIS 10057, *11 (S.D.N.Y. 1998) ("termination of employment does not per se disqualify a claimant from bringing a suit under ERISA, nor does acceptance of a distribution").

In Mullins v. Pfizer, 23 F.3d 663 (1994), the Second Circuit[10] was presented with the issue of whether an employee who alleged he voluntarily retired because of an affirmative material

---

[9]     Pursuant to their rights under ERISA, plaintiffs also seek to recover benefits and enforce rights under the Plan, enjoin acts that violate Plan terms, and obtain "other appropriate equitable relief."  See Complaint Prayer for Relief A - D; see also 29 U.S.C. §§ 1132(a)(1)(B) (to recover benefits and enforce rights under the Plan), 1132(a)(2) (to remedy breaches of fiduciary duty under ERISA Section 409), and 1132(a)(3) (to enjoin acts that violate plan terms and "to obtain other appropriate equitable relief"); Varity Corp. v. Howe, 516 U.S. 489, 509-512 (1996) (describing how the subsections of ERISA Section 502(a) work together and how subsection 502(a)(3) works as a "catchall" with respect to the other sub-sections).

[10]     Defendants' citation to Raymond v. Mobil Oil Corp., 983 F.2d 1528 (10th Cir. 1993) for support of its argument is unpersuasive.  The Tenth Circuit has squarely rejected the Second Circuit's approach to ERISA standing.  See Mullins v. Pfizer, 23 F.3d 663, 667 (2d Cir. 1994) (citing Raymond v. Mobil Oil for the proposition that the Tenth Circuit has rejected the Second Circuit's ERISA standing approach); Swinney v. General Motors Corp., 46 F.3d 512 (6th Cir. 1995) (citing Raymond v. Mobil Oil Corp., 983 F.2d 1528 for the proposition that the Tenth Circuit has rejected the approach to ERISA standing set forth in Mullins); Felix v. Lucent Technologies, 387 F.3d 1146, 1159 (10th Cir. 2004) (noting split in circuits regarding the "but-for exception").

misrepresentation by a fiduciary had standing to sue under ERISA.  The court found that "the basic standing issue is whether the plaintiff is 'within the zone of interests ERISA was intended to protect.'" Id. at 668.  The Second Circuit held that a claimant is within the ERISA zone of interests, and, therefore, has standing, if he can demonstrate that he would have been a participant in the employer's benefit plan "but for" the employer's misrepresentations.  Id. at 668; see also Partsinevelos v. Tropical Machines, Inc., 31 Employee Benefits Cas. (BNA) 2118 (2d Cir. 2003).  The Second Circuit in Mullins reasoned that such a holding was consistent with the legislative intent to afford broad protection, and therefore standing, in such a context because "to hold otherwise would have an anomalous effect of allowing a fiduciary 'through its own malfeasance to defeat an employee's standing.'"  Mullins, supra, at 668.

Here, plaintiffs claim they are entitled to relief because of the causal relationship between defendants' misrepresentations regarding accessing plan monies and their decision to terminate their employment.[11]  Each of the plaintiffs in this case assert they would have chosen another option besides retiring or resigning to obtain Plan monies.  They were on the Recall List and had no intention of retiring or resigning and sacrificing their livelihood.  See e.g. Rozell Aff. ¶ 16; Whible Aff. ¶ 14; Cowles Aff. ¶ 14.  Indeed, plaintiff Cowles stated directly that he was resigning "to pull my 401(k)".  Cowles Aff. ¶¶ 11-12, Exhibit "B".  If they had been able to exercise another option, such as hardship withdrawal, they would have been able to wait longer to be recalled.  Moreover, it is likely that had they been able to wait for a longer period of time, they would have been recalled.  See e.g. Cowles Aff. ¶ 15, Harris Aff. ¶ 20; Whible Aff. ¶ 15.  Thus, plaintiffs were denied the right to maintain their status as participants within the meaning of ERISA Section 3(7) [29 U.S.C. §1002(7)] because of Defendants' violations of ERISA

---

[11]    Nechias v. Oxford Health Plans, Inc., 421 F.2d 96 (2d Cir. 2005) relied on by defendants is distinguishable.  In Nechias, unlike the instant matter, the plaintiff was terminated because of corporate downsizing, not ERISA malfeasance. The Court found that "as a practical matter [the plaintiff's] termination in a downsizing meant she could no longer expect to receive" benefits from her employment, which ended her expectation for employment-related benefits. Id. at 101.  Here, plaintiffs allege their employment relationship was terminated because of a misrepresentation that amounted to a breach of fiduciary duty under ERISA.

Sections 404(a), 405(a), and 510.  Accordingly, plaintiffs are within ERISA's zone of interests because "but for the fact that the fiduciaries misled them, they would have been participants."  See Mullins, supra, at 667-668; Gray v. Briggs, 1998 U.S. Dist. LEXIS 10057, *14 (S.D.N.Y. 1998) (denial of standing "would be particularly unjust and arbitrary where the misrepresentations and termination were causally linked.").

Defendants boldly (but wrongly) posit that Mullins v. Pfizer, supra, stands for the proposition that the so-called "but for" exception "should be applied only in cases where plaintiff alleges that he could not have known the 'true facts' about defendant's efforts to defeat participant status in the employer's plan."  Def. Memorandum, p. 13.  In stark contrast to defendants' argument, Mullins states that "when a plan administrator speaks, it must speak truthfully."  Mullins, supra, at 669.  Indeed, the Second Circuit holds that the burden is on the fiduciary to speak truthfully and not to affirmatively mislead participants. Flanigan v. GE, 242 F.3d 78, 84 (2d Cir. 2000) (fiduciaries liable for non-disclosure of information when omitted information was necessary to participant's intelligent decision about retirement).

Defendants also argue that plaintiffs do not have standing because they have neither a claim for vested benefits nor a reasonable expectation to return to covered employment.  Def. Memorandum, p. 12. As made clear supra, such a narrow reading of ERISA standing is not consistent with Second Circuit caselaw.  Additionally, in contrast to defendants' argument, plaintiffs have a reasonable expectation of returning to employment as evidenced by their request in the complaint for an injunction ordering defendants to permit plaintiffs to rescind their elections to resign and retire from the corporation and reinstate plaintiffs to their positions with the corporation with full back pay.[12]  Complaint Prayer for Relief, paragraph B; see also Mitchell v. Mobil Oil Corp., 896 F.2d 463, 474 (10th Cir. 1990) (plaintiff had not sought reinstatement and, therefore, lacked reasonable expectation of returning to covered

---

[12]    Moreover, plaintiffs assert that "but for" the fiduciary misrepresentation, they would have been recalled to their positions at Finch, Pruyn.  See e.g. Cowles Aff. ¶ 15, Harris Aff. ¶ 20; Whible Aff. ¶ 15.

employment.)  Accordingly, defendants' argument that plaintiffs' claims should be dismissed because they were not participants in an ERISA plan must be rejected.

## POINT IV

### THE COMPLAINT ADEQUATELY ALLEGES DEFENDANTS CAROTA, MANNY, AND LAVIGNE'S FIDUCIARY STATUS.

The complaint adequately alleges the fiduciary status of defendants Richard J. Carota, David P. Manny, and Laurier J. Lavigne.  Mr. Carota, Mr. Manny, and Mr. Lavigne had the authority to represent Finch Pruyn regarding the Plan.  To the extent Mr. Carota, Mr. Manny, and Mr. Lavigne did so and, thereby, engaged in plan administration and exercised discretionary authority, they are fiduciaries. Additionally, there are a number of questions of material fact regarding the delegation of fiduciary responsibility, the power to appoint fiduciaries, and the responsibility to monitor fiduciary performance. These material issues of fact preclude the grant of summary judgment.

Under ERISA's functional test of fiduciary status, a person is a plan fiduciary to the extent that "he has any discretionary authority or discretionary responsibility in the administration of the plan."  29 U.S.C. §1002(21)(A)(iii) (emphasis added).  The term "fiduciary" is liberally construed in keeping with the remedial purposes of ERISA.  Local 102 Health & Welfare Fund v. Equitable, 841 F.2d 658, 662 (5th Cir. 1988).  Fiduciary status is defined not only by reference to particular titles, but also by the authority which a particular person has or exercises over an employee benefit plan.  Bannister v. Ullman, 287 F.3d 394, 401 (5th Cir. 2002).  "Determining whether someone is a fiduciary is a very fact-specific inquiry." In re Freuhauf Trailer Corp., 250 Bankr. L. Rep. (CCH) 168, 204 (D.Del. 2000); Kramer v. SmithBarney, 80 F.3d 1080, 1084 n. 2 (5th Cir. 1996) (ERISA fiduciary status is a mixed question of fact and law).

**A.**     **Carota, Manny, and Lavigne's Oversight of Plan Operations Creates Fiduciary Status.**

Defendants argue that "all claims against Carota, Manny, and Lavigne should be dismissed for plaintiffs' failure to state a claim against them upon which relief can be granted." Def. Memorandum, p. 14.[13] Defendants point to the Corporate Resolution as evidence that Defendants Carota, Manny, and Lavigne are not fiduciaries because they were named only "to represent the Corporation with respect to Plan operations." Def. Memorandum of Law, p. 16. In contrast, that language is evidence that defendants are plan fiduciaries and, thus, are appropriate defendants in the instant matter. To the extent that Mr. Carota, Mr. Manny, or Mr. Lavigne were not simply acting on the corporation's behalf in a corporate capacity, but rather exercised discretionary authority or responsibility "with respect to Plan operations" during the time periods relevant to this case, they were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A). See Kayes v. Pacific Lumber, 51 F.3d 1449, 1460 (9th Cir.) (corporations cannot shield its decision makers from liability merely by stating in Plan documents that their actions are taken on behalf of a company). Officers and directors are fiduciaries when they have discretionary authority or control over plans. See Weyseta v. Baima, 837 F.2d 380, 384-85 (9th Cir. 1988) (corporate officer of plan sponsor which also administered plan held to be fiduciary based on his discretionary authority and responsibility in the administration of the plan); Martin v. Schwab, 15 Employee Ben. Cas. 2135 (BNA), (W.D.Mo. 1992) ("defendants' contention that they have no individual exposure as fiduciaries [because they were on the board of directors] is clearly at odds with the language of the statutes. . . .Congress 'conferred fiduciary status on persons and entities by activity not by label.'").

---

[13]     Defendants state that "the only purported acts of fiduciary misconduct detailed in the Complaint relate to Defendants Levandosky" and Benway and, therefore, only Benway and Levandosky are properly named as defendants. Def. Memorandum, p. 14, 17. In contrast, the Complaint alleges fiduciary status of each defendant and alleges fiduciary misconduct against not only Defendants Levandosky and Benway, but against the Retirement Board, members of the Retirement Board, and Finch Pruyn. See Complaint First through Fifth Causes of Action against Retirement Board as a fiduciary; Sixth through Twelfth Causes of Action against Finch Pruyn as a fiduciary.

Thus, the Corporate Resolution stating defendants Carota, Manny, and Lavigne have authority to represent Finch Pruyn regarding the Plan is sufficient to establish a material issue of fact as to whether they exercised discretionary responsibility over the Plan when they "represented the Corporation with respect to Plan operations."

Moreover, there are material issues of fact regarding the defendants Carota, Manny, and Lavigne's exercise of authority over the Plan.  It has not been established that all "fiduciary duties and obligations" were delegated to the Plan Administrator.  The Retirement Board was the initial Plan Administrator and, as such, was a fiduciary.  Without discovery, it is impossible to ascertain: (1) who specifically delegated the Plan Administrator's authority:  Finch as the employer or a "Committee established by the Employer," and, if the latter, who was on that committee [see Plan Document, Article 15.1, attached as Exhibit "B" to Levandosky Aff.]; (2) whether, as members of the Retirement Board, defendants Manny and Lavigne exercised discretionary authority or control over the Plan; and (3) whether one of the "Retirement Boards" referenced in defendant Carota's memo [Exhibit 4 attached to Levandosky Supplemental Aff.] exercised discretionary authority over the Plan.  Such fiduciary status is a material element in allocating responsibility for the fiduciary breach which caused the plaintiffs to resign and or retire.  Thus, summary judgment is inappropriate because there is a dispute of material fact regarding the extent of fiduciary status of the defendants.

There are also issues of material fact regarding defendant Carota's authority.  Defendant Carota exercised discretionary authority by virtue of his appointment of J.W. Benway to the Retirement Board. See August 21, 2002 Memorandum, Exhibit 4 attached to Levandosky Supplemental Aff..  The power to appoint, retain, and remove Plan fiduciaries is discretionary authority over the management or

23

administration of a plan and, thus, its exercise creates fiduciary status. [14] Liss v. Smith, 991 F.Supp. 278, 310 (S.D.N.Y. 1998); 29 C.F.R. §2509.75-8 at D-4.  Without discovery, plaintiffs are not able to ascertain if defendant Carota exercised the discretionary authority to appoint and remove any Plan fiduciaries.

**B.     Co-Fiduciary Liability Can be Established for Failure to Monitor.**

Corporate officers, like defendant Carota, who appoint fiduciaries must "insure that the appointed fiduciary clearly understands his obligation, that he has at his disposal the appropriate tools to perform his duties with integrity and competence, and that he is appropriately using those tools." Martin v. Hairline, 15 E.B.C. 1138, 149 (D. Utah 1992).  In accordance with these duties of oversight, the appointing authority, which can not be determined without discovery, has an obligation to monitor the fiduciaries' conduct and take appropriate action if Defendant Levandosky or any other fiduciary was not adequately protecting the interests of the Plan's participants and beneficiaries.  The precise nature of the actions required is a question of fact, depending on the circumstances.  Liss v. Smith, 991 F.Supp. 278, 311 (S.D.N.Y. 1998).

Discovery is needed, in addition to ascertaining fiduciary status, to determine if the fiduciaries took adequate steps to protect participants' rights.  Additionally, to hold a fiduciary liable under "§405(a)(2), a plaintiff must demonstrate that the fiduciary failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." Silverman v. Mutual Benefit Life, 941 F. Supp. 1327, 1336 (E.D.N.Y. 1996).  A fiduciary's inaction or failure to act promptly to halt another fiduciary's breach can give rise to co-fiduciary liability.  See e.g. Chicago Housing Authority v. J.A. Hannah Inv.,

---

[14]     Defendants' assertion that "obviously, a person who has never been a fiduciary can not be held liable for any breach," is incorrect.  Def. Memorandum, p. 18.  A non-fiduciary may be sued for appropriate equitable relief under ERISA 502(a)(3) if the non-fiduciary has actual or constructive knowledge of the fiduciary breach.  Harris Trust, 530 U.S. 238, 251 (2000).  Furthermore, a non-fiduciary can be a proper defendant under 502(a)(3).  Carlson Principal Fin. Group, 320 F.3d 301, 308 (2d Cir. 2003).  Thus, even if defendants are not fiduciaries, they may still be subject to appropriate equitable relief if they had actual or constructive knowledge of the fiduciary breaches.  See Complaint ¶¶190-194.

1996 WL 328033 at *5 (N.D. Ill. 1996); Jackson v. Truck Drivers Local 42 Health and Welfare Fund,

933 F.Supp. 1134, 1141 (D. Mass. 1996) ("a fiduciary who becomes aware that a co-fiduciary has

breached his fiduciary duty may not escape liability by simply casting a blind eye toward the breach.")

Thus, the Court could find defendants Carota, Manny, Lavigne, the Retirement Board, or another

fiduciary liable under Section 405, if their actions enabled other fiduciaries to breach their duties.

Because discovery is required to determine whether these defendants enabled defendant Levandosky and

others to breach their fiduciary duties in violation of ERISA Sections 404(a) or 405(a), summary

judgment is not appropriate.

## CONCLUSION

For all of the foregoing reasons and authorities, it is submitted that defendants' summary

judgment motion should be denied.  Defendants have failed to meet the heavy burden of establishing

there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a

matter of law.

Dated:  January 31, 2006

Respectfully submitted,

BLITMAN & KING LLP

By: _____

Stephanie A. Miner, Esq.
Bar Roll No. 510444
Attorneys for Petitioners
Office and Post Office Address
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York  13204-1415
Telephone (315) 422-7111
Facsimile (315) 471-2623

jas/sam/PACE FP 401(k)/Pleadings/sjMOL25page