**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES C. HARRIS; THOMAS CLIFFORD;**
**DAVID R. DESROSIERS; RICHARD M. EVENS;**
**WILLIAM S. MCLAUGHLIN, JR.; THOMAS M.**
**MURPHY; JAMES POWERS; GARY PREVOST;**
**ROBERT ROZELL; TERRY L. VANARNUM, JR.;**
**KEVIN WHIBLE; PAUL J. WOLFE; DAVID J.**
**COWLES; and JOHN W. WEAVER,**

                              **Plaintiffs,**

                  **v.**                                        **1:05-CV-951**
                                                                **(FJS/RFT)**

**FINCH, PRUYN & COMPANY, INC.;**
**THE RETIREMENT BOARD OF FINCH,**
**PRUYN & COMPANY, INC.; RICHARD J.**
**CAROTA; DAVID P. MANNY; LAURIER J.**
**LAVIGNE; JEFFREY W. BENWAY; and**
**JOHN E. LEVANDOSKY,**

                              **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**BLITMAN & KING, LLP**                       **STEPHANIE A. MINER, ESQ.**
Franklin Center, Suite 300                    **JAMES R. LAVAUTE, ESQ.**
443 North Franklin Street                     **DANIEL E. KORNFELD, ESQ.**
Syracuse, New York 13204-1415
Attorneys for Plaintiffs

**COUCH WHITE, LLP**                          **MICHAEL T. WALLENDER, ESQ.**
540 Broadway
Albany, New York 12201
Attorneys for Defendants

**OGLETREE, DEAKINS, NASH,**           **PETER D. POST, ESQ.**
**SMOAK & STEWART, P.C.**
Four Gateway Center, Suite 400
444 Liberty Avenue
Pittsburgh, Pennsylvania 15222-1237
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs are fourteen former employees of Defendant Finch, Pruyn & Company, Inc. ("Finch Pruyn") who participated in the company's Hourly 401K Plan ("Plan"). They filed this complaint on July 28, 2005,[1] asserting a panoply of breach-of-fiduciary-duty claims against Defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, Plaintiffs state claims against Defendant Retirement Board and its members for fraudulent misrepresentation, negligent misrepresentation, failure to provide accurate information in response to Plaintiffs' requests, failure to monitor fiduciaries in the performance of their duties, and enabling fiduciaries to distribute false information to Plaintiffs.

Plaintiffs state claims against Defendant Finch Pruyn for fraudulent misrepresentation, negligent misrepresentation, failure to provide accurate information in response to Plaintiffs' requests, failure to monitor fiduciaries in the performance of their duties, enabling fiduciaries to distribute false information to Plaintiffs, failure to exercise care in appointing fiduciaries, failure

---

[1] The parties offer conflicting dates for when Plaintiffs filed the complaint. Defendants state that the "suit was filed" on September 6, 2005. *See* Defendants' Memorandum of Law, dated November 4, 2005, at 4. Plaintiffs state that they filed the complaint on July 27, 2005. *See* Plaintiffs' Memorandum of Law, dated December 6, 2005, at 2. In fact, Plaintiffs filed the complaint on July 28, 2005. Therefore, for statute-of-limitations purposes, this action commenced on July 28, 2005, in accordance with Rule 3 of the Federal Rules of Civil Procedure.

to prevent the distribution of false information to Plaintiffs, and non-fiduciary liability due to knowledge of the breach. *See* Complaint at ¶¶ 114-94. Plaintiffs also claim that all Defendants violated ERISA § 510 by discriminating against them for the purpose of interfering with their attainment of rights under the Plan. *See id.* at ¶¶ 196-97. They seek equitable relief in the form of rescission of their resignations and retirements and reinstatement with full back pay and restored benefits. They additionally seek reasonable attorney's fees and costs.

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Although both parties' submissions in this matter suffer from a lack of clarity and organization, the Court construes Defendants' Memorandum of Law as asserting the following grounds for summary judgment: (1) Plaintiffs' claims are time-barred; (2) Plaintiffs are not "participants" and, therefore, are not entitled to relief under 29 U.S.C. § 1132(a)(3); (3) Defendants Carota, Manny, Lavigne, Retirement Board, and Finch Pruyn are not fiduciaries and, therefore, did not owe a duty to Plaintiffs; (4) Plaintiffs do not allege sufficient facts against Defendant Carota to state a claim against him pursuant to Rules 8(a)(2) and 12(b)(6); (5) Plaintiffs do not allege sufficient facts to state a claim against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne for material misrepresentations or omissions pursuant to Rules 8(a)(2) and 12(b)(6); (6) Plaintiffs do not allege sufficient facts to state a claim against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne based on their knowledge of a co-fiduciary's breach; and (7) Plaintiffs fail to state a claim against

_____

[2] Defendants originally labeled their motion as a motion to dismiss pursuant to Rule 12(b)(6); however, the Court subsequently granted Plaintiffs' request to convert this motion into one for summary judgment in light of the fact that Defendants refer to facts outside of the pleadings. *See* Order, dated December 9, 2005, at 2.

Defendants for non-fiduciary liability.

## II. BACKGROUND

Each Plaintiff participated in the Plan, which Defendant Finch Pruyn created to allow its hourly-paid employees to make regular contributions to a retirement benefits account in amounts as high as fifteen percent of their annual earnings.  *See* Complaint at ¶ 36; Affidavit of John E. Levandosky, sworn to November 3, 2005 ("Levandosky Aff."), at ¶ 9.  Under the Plan, participants were entitled to a distribution of their account balance upon retirement or resignation.  *See* Defendants' Memorandum of Law, dated November 4, 2005, at 1-2. Alternatively, participants could obtain money from their accounts without terminating their employment with Defendant Finch Pruyn by two methods.  First, they could borrow up to fifty percent of their account balance for any reason.  *See* Defendants' Statement of Material Facts at ¶ 78.  Second, they could make "hardship withdrawals," which were available for certain financial needs such as medical care, post-secondary-education tuition, and housing payments. *See id.* at ¶¶ 80-81.  Defendants claim that they informed Plaintiffs about the various features of the Plan, including the withdrawal options, at a number of informal meetings held before the Plan became effective on October 1, 1997.  *See id.* at ¶¶ 73-74.  On January 28, 1998, Defendants issued each Plaintiff a summary plan description ("SPD"), which contained information about Plan provisions in question-and-answer format.  *See* Levandosky Aff. at Exhibit "D."

In June 2001, Plaintiffs participated in a strike against Defendant Finch Pruyn.  *See* Plaintiffs' Memorandum of Law, dated January 31, 2006, at 1.  Defendant Finch Pruyn hired replacement workers during the strike; and, as a result, when the strike ended in November 2001,

there were not enough vacancies to reinstate all of the strikers. *See id.* at 1-2. Plaintiffs were

among those who were not reinstated. *See id.* at 2. Beginning in November 2001[3] and

throughout 2002,[4] Plaintiffs contacted Defendant John Levandosky, Defendant Finch Pruyn's

benefits manager, requesting information about their Plan accounts. *See* Complaint at ¶¶ 43-113.

According to Plaintiffs, Defendant Levandosky told some of them that they would have to resign

or retire in order to access money from their Plan accounts. *See id.* at ¶¶ 49, 54, 59, 73, 78, 83,

88, 93, 103, 110. Plaintiffs assert that, in conversations with others, Defendant Levandosky

failed to inform them about the possibility of accessing money through loans and hardship

withdrawals. *See id.* at ¶¶ 44, 64, 69, 98. Plaintiff Desrosiers also contacted personnel director

Jeffrey Benway about his Plan account. See id. at ¶ 53. He claims that Defendant Benway told

him he must submit a letter of resignation in order to access the funds in his Plan account. *See*

*id.* at ¶¶ 54-55. Plaintiffs state that they did not learn that Defendants' statements about the Plan

were false until they attended a union meeting on April 6, 2005. *See* Plaintiffs' Memorandum of

Law, dated January 31, 2006, at 13.

---

[3] Some Plaintiffs appear to have spoken with Defendant Levandosky about the Plan before November 2001. Plaintiff McLaughlin claims to have contacted Defendant Levandosky about his account "[s]ometime in early 2000." *See* Complaint at ¶ 63. Plaintiff Whible claims to have contacted Defendant Levandosky "[s]ometime in 2001." *See id.* at ¶ 92. Plaintiff Weaver claims to have contacted Defendant Levandosky in September 2001. *See id.* at ¶ 108.

[4] Plaintiff Evens, however, did not seek Defendant Levandosky's advice about the Plan until January 2003. *See* Complaint at ¶ 58.

## III. DISCUSSION

**A.      Timeliness of Plaintiffs' claims**

### 1. Breach-of-fiduciary-duty claims

The statute of limitations for bringing fiduciary claims is statutorily prescribed:

> No action may be commenced under this subchapter with respect
> to a fiduciary's breach of any responsibility, duty, or obligation
> under this part, or with respect to a violation of this part, after the
> earlier of–
>
>> (1) six years after (A) the date of the last actions which
>> constituted a part of the breach or violations, or (B) in the
>> case of an omission the latest date on which the fiduciary
>> could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff
>> had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of
> such breach or violation.

29 U.S.C. § 1113.

Defendants contend that Plaintiffs' claims are time-barred because they acquired actual

knowledge of the "breach or violation"[5] on the date that they retired or resigned, which was more

_____

[5] The "breach or violation" occurred when each Plaintiff terminated his employment, not when he received the alleged misstatements from Defendants Levandosky and Benway.  An ERISA plan participant may bring a cause of action against a fiduciary for intentional or negligent misrepresentation if he can demonstrate that (1) the defendant, while acting in his capacity as a fiduciary, (2) made a "material" misrepresentation, (3) *which the plaintiff relied on to his detriment*.  *See James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (citing *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122, 126 (2d Cir. 1997)) (other citation omitted).  Since Plaintiffs did not rely on Defendants' statements to their detriment until they terminated their employment, the "breach or violation" could not have occurred until that moment.

-6-

than three years before they commenced this action on July 28, 2005.[6]  Specifically, Defendants

assert that, assuming Defendant Levandosky's and Defendant Benway's statements about the

Plan were false or misleading, Plaintiffs were aware of these inaccuracies for two reasons.  First,

they had access to the Plan's terms in various forms, including the SPD, which Defendant Finch

Pruyn had issued to them on January 28, 1998.  Second, five Plaintiffs had previously borrowed

money from their Plan accounts[7] and one Plaintiff had taken a hardship withdrawal.[8]

To have "actual knowledge" within the meaning of subsection two, a plaintiff does not

have to know the relevant law; however, he must have "knowledge of all material facts necessary

to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the

Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) (citations omitted).  Constructive

knowledge is not enough.  *See id.* at 194.  Therefore, possession of an SPD, alone, is insufficient

to trigger the three-year limitations period.  *See Harley v. Unisys Corp. (In re Unisys Corp.*

*Retiree Medical Benefits ERISA Litigation)*, No. 03-3924, 2006 WL 2822261, *60 (E.D. Pa.

Sept. 29, 2006), *adopted in part and modified in part*, 2007 WL 2071876 (E.D. Pa. July 17,

2007) (holding that the plaintiffs' receipt of an SPD, which contained a provision explaining the

company's right to modify or discontinue medical benefits for retired employees, did not, by

itself, constitute actual knowledge).  "Actual knowledge" requires that the plaintiff read and

---

[6] All Plaintiffs, except Plaintiff Evens, retired or resigned between January 1, 2002, and June 17, 2002.  Plaintiff Evens retired on February 1, 2003; therefore, Defendants concede that his claims are timely.

[7] Plaintiffs Clifford, Desrosiers, McLaughlin, VanArnum, and Cowles had obtained loans from their Plan accounts.  *See* Levandosky Aff. at ¶ 10.

[8] Plaintiff Clifford had obtained a hardship withdrawal.  *See* Levandosky Aff. at ¶ 11.

understand the terms listed in the plan or SPD.  *Cf. McConnell v. Costigan*, No. 00 CIV. 4598,

2002 WL 313528, *9 (S.D.N.Y. Feb. 28, 2002) (finding that the plaintiffs did not have actual

notice because, although they received regular reports of remittances to their 401(k) accounts,

they would not have detected the late remittances without carefully studying those reports).  This

requires a level of comprehension necessary to understand the full meaning of the available

information and recognize that it could translate into an ERISA action.  *See Meyer v. Berkshire*

*Life Ins. Co.*, 250 F. Supp. 2d 544, 568-69 (D. Md. 2003) (holding that financial reports did not

give the plaintiffs actual knowledge because they "were not financially astute," the financial

documents were objectively confusing, and information presented to the plaintiffs at infrequent

meetings was brief and lacked detail).

   Although Defendants present evidence of Plaintiffs' constructive knowledge, they do not

present any evidence of actual knowledge.  There is no indication that Plaintiffs actually read the

Plan terms or the SPD.  Even though they had previously taken loans and hardship withdrawals

from their Plan accounts, it is not obvious that Plaintiffs understood that they were entitled to do

the same in their status as "unreinstated strikers."  Furthermore, if Defendants Benway and

Levandosky actually misled Plaintiffs, they would have been ignorant of any breach or violation.

Accordingly, the Court denies Defendants' motion for summary judgment on this ground.

   Even if Plaintiffs' claims were time-barred under the three-year period of limitations, the

Court finds that Plaintiffs' fraudulent-misrepresentation claims against Defendants are timely

under the six-year period for "fraud or concealment."  "[T]he six-year statute of limitations

should be applied to cases in which a fiduciary: (1) breached its duty by making a knowing

misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his

detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Caputo*, 267 F.3d at 190 (citation omitted).  Additionally, plaintiffs must plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  Under Rule 9(b), in addition to specifying the time, place, speaker, and content of the alleged misrepresentations, a plaintiff asserting a fraud claim must "explain how the misrepresentations were fraudulent and 'plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Id.* at 191 (quotation omitted).

In their complaint, Plaintiffs identify the speaker, place, and basic content of each alleged misrepresentation.  However, Defendants challenge the adequacy of Plaintiffs' pleadings with regard to the relevant dates and mental state of the speaker.  Where a speaker made the same statement several times over an extended period, the requirement that a plaintiff identify the exact time and date of those statements is relaxed.  *See Pollack v. Laidlaw Holdings, Inc.*, No. 90 Civ. 5788, 1995 WL 261518, *9 (S.D.N.Y. May 3, 1995).  Since Defendant Levandosky allegedly made similar statements more than fourteen times beginning in November 2001 and throughout 2002, Defendants had adequate notice of the relevant dates pursuant to Rule 9(b).[9]

Furthermore, Plaintiffs' complaint contains facts sufficient to show that Defendants made the alleged misrepresentations knowingly, intentionally, or recklessly.  In their complaint, Plaintiffs allege that Defendants "provid[ed] misinformation to Plaintiffs about the terms and

---

[9] Additionally, Plaintiffs assert that Defendant Benway spoke with Plaintiff Desrosiers in June 2002.  *See* Complaint at ¶ 53.  Unlike Defendant Levandosky, who allegedly made many misrepresentations, this is the only incident in which Plaintiffs accuse Defendant Benway of making a misrepresentation.  Nevertheless, Plaintiffs provided the month and year of the alleged conversation.  This, coupled with a reference to a similar telephone conversation between Plaintiff Desrosiers and Defendant Levandosky at about the same time, gives Defendants sufficient notice of this incident.

conditions of the Plan Document to encourage terminations of employment for the benefit of

Defendant Finch Pruyn." *See* Complaint at ¶ 128.  Although Plaintiffs do not offer direct proof

of Defendants' mental state, Rule 9(b) merely requires that Plaintiffs present facts that "give rise

to a strong inference" of knowledge, intent, or reckless disregard.  *Caputo*, 267 F.3d at 191; *see*

*also Manning v. Niagara Mohawk Power Corp.*, No. 95-CV-1149, 1997 WL 216214, *5

(N.D.N.Y. Apr. 15, 1997) ("Malice, intent, knowledge and other condition of mind of a person

may be averred generally.").  Under this standard, it is sufficient that Plaintiffs allege that

Defendants Benway and Levandosky, the personnel director and benefits manager of Defendant

Finch Pruyn, told Plaintiffs on numerous occasions that they could only obtain their Plan funds

after retirement or resignation.  These circumstances at least allow an inference of recklessness.

Accordingly, the Court finds that the Plaintiffs' fraudulent-misrepresentation claims are timely

under the six-year "fraud or concealment" statute of limitations.[10]

---

[10] Under the six-year "fraud or concealment" statute of limitations, Plaintiffs must have
discovered the "breach or violation" no earlier than July 28, 1999.  Since each Plaintiff
terminated his employment after January 1, 2002, all of their fraudulent-misrepresentation claims
are timely.

### 2. *ERISA § 510 claims*[11]

Since § 510 does not provide its own statute of limitations, the Second Circuit has adopted a two-year statute of limitations from New York Worker's Compensation Law § 120. *See Sandberg v. KPMG Peat Marwick*, LLP, 111 F.3d 331, 336 (2d Cir. 1997).  A plaintiff must bring a § 510 action within two years from the date on which the claim accrues.  A § 510 claim accrues when the employer takes an adverse action against the plaintiff and communicates that action to the plaintiff — not when the plaintiff first becomes aware of the action's illegality or when the consequences of that employment decision ultimately take effect.  *See Foley v. Bethlehem Steel Corp.*, No. 87-CV-1489A, 1998 WL 34313090, *10-*11 (W.D.N.Y. Jan. 27, 1998); *accord Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992).  Under this standard, Plaintiffs' claims accrued, if at all, when Defendants made the alleged misrepresentations to them about their access to Plan funds supposedly for the purpose of coercing them into terminating their employment.  In order for Plaintiffs' § 510 claims to be considered timely, Defendants must have made these misrepresentations after July 28, 2003.  However, none of the misrepresentations, or for that matter Plaintiffs' subsequent retirements and resignations, occurred later than January 2003.

---

[11] ERISA § 510 provides, in pertinent part, that

> [i]t shall be unlawful for any person to . . . discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140.

Nevertheless, Plaintiffs may be able to preserve their § 510 claims under the doctrine of equitable tolling or fraudulent concealment or both.  Although these two theories are often conflated, "[e]quitable tolling permits a plaintiff to avoid the bar of the statute of limitations 'if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim. . . .'"  *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (quotation omitted).  Fraudulent concealment, on the other hand, tolls the statute of limitations where the defendant has engaged in a certain level of misconduct.  *See id.* at 182-83.  Both doctrines are available to an ERISA plaintiff.  *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004); *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343-44 (E.D. Tex. 2003) (citations omitted).

Plaintiffs allege sufficient facts to survive summary judgment on either ground.  Plaintiffs submit evidence that they received inaccurate or misleading advice from Defendants Benway and Levandosky about their rights under the Plan.  Although Plaintiffs had access to the SPD and other Plan documents, the fact that they sought advice from Plan administrators creates an issue of fact concerning whether they could have obtained the necessary information through reasonable diligence.  *Cf. Veltri*, 393 F.3d at 324 (holding in ERISA denial of benefits case that, although the defendants had given the plaintiff documents containing information about his right to administratively appeal an adverse benefits determination, equitable tolling was warranted because the defendants did not provide him with a federally-mandated statement outlining his right to bring a civil action in court).  Furthermore, Plaintiffs submit evidence from which a trier of fact could infer that Defendants engaged in fraudulent concealment.  Accordingly, the Court denies Defendants' motion for summary judgment on the ground that Plaintiffs' § 510 claims are

time-barred.

**B.       Plaintiffs' status as "participants"**

Under 29 U.S.C. § 1132(a)(3), "[a] civil action [for equitable relief] may be brought . . .

by a participant, beneficiary, or fiduciary . . . ."  29 U.S.C. § 1132(a)(3).  A "participant" is "any

employee or former employee of an employer, or any member or former member of an employee

organization, who is or may become eligible to receive a benefit of any type from an employee

benefit plan . . . ."  29 U.S.C. § 1002(7).  "In order to establish that he or she 'may become

eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a

suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  *Firestone Tire*

*& Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

A former employee may be considered a "participant" if he is "'*within the zone of*

*interests ERISA was intended to protect.*'"  *Mullins v. Pfizer*, 23 F.3d 663, 668 (2d Cir. 1994)

(quoting [*Vartanian v. Monsanto Co.*], 14 F.3d [697,] 701 [(1st Cir. 1994)]).  A plaintiff comes

within the "zone of interests" if he can demonstrate that, "but for" an employer's

misrepresentations, he would have been a participant in the ERISA plan.  *See id.* at 667 (citations

omitted).

Defendants assert that they did not give Plaintiffs incomplete or misleading information

and that Plaintiffs knew they could make withdrawals without terminating their employment;

however, Plaintiffs submit sufficient evidence to the contrary to create a genuine issue of

material fact.  Additionally, they submit affidavits stating that they decided to terminate their

employment based on Defendants' alleged misrepresentations because they needed immediate

access to the money from their Plan accounts.  This evidence suggests that they would still be

enrolled in the Plan "but for" Defendants' material misrepresentations.  Accordingly, the Court

denies Defendants' motion for summary judgment on the ground that Plaintiffs are not Plan

"participants."


C.      **Sufficiency of the pleadings**

        Rule 8(a) of the Federal Rules of Civil Procedure requires, among other things, that a

pleading contain "a short and plain statement of the claim showing that the pleader is entitled to

relief . . . ."  Fed. R. Civ. P. 8(a)(2).

> While a complaint . . . does not need detailed factual allegations, . .
> . a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of action will
> not do. . . .  Factual allegations must be enough to raise a right to
> relief above the speculative level, . . . on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact) . . . .

*Jones v. McMahon*, No. 5:98-CV-0374, 2007 WL 2027910, *6 (N.D.N.Y. July 11, 2007)

(quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007)).


        *1. Plaintiffs' claims against Defendant Carota*

        Under *Twombly*'s "above the speculative level" standard, the pleadings are deficient if,

although the plaintiff states the defendant's name in the caption, he does not mention his name

anywhere in the body of the pleading.  *See id; In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,

No. 02 Civ. 8853, 2005 WL 563166, *4 (S.D.N.Y. Mar. 10, 2005) (dismissing breach-of-

fiduciary-duty claims against an officer of the employer where the complaint merely stated that

-14-

he was executive vice president and chief financial officer of the employer because "a defendant's role as an executive of the employing company is, standing alone, insufficient to confer fiduciary status . . . .").

Other than listing Defendant Carota in the caption, the complaint only mentions him twice, under the heading "Description of Defendants." *See* Complaint at ¶¶ 21-22. The complaint states that he is the chairman, president, and CEO of Defendant Finch Pruyn and that he was a member of the retirement board during all times relevant to this case. *See id.* Defendants submit evidence, however, that he was never a member of the retirement board, *see* Levandosky Aff. at ¶¶ 4-5, and Plaintiffs do not contest this fact. Since Defendant Carota is not mentioned by name or referenced anywhere else in the complaint, the Court grants summary judgment to Defendants on this ground.

### 2. Plaintiffs' claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne for material misrepresentations or omissions

Plaintiffs' complaint does not contain any factual allegations that support their claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne for material misrepresentations or omissions. As stated, under Rule 8(a)(2), "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 127 S. Ct. at 1965.

Plaintiffs' complaint states that Defendants Levandosky and Benway told some of them that they had to retire or resign in order to obtain distributions from their benefits accounts and failed to inform others that they could obtain these distributions without terminating their employment. The complaint does not state that anyone else made similar statements. Only when

listing their causes of action do Plaintiffs conclude that Defendant Retirement Board, its

members, and Defendant Finch Pruyn made material misrepresentations and failed to provide

accurate information in response to Plaintiffs' inquiries.  However, these stock phrases,

seemingly reproduced from a form complaint, do not correspond with Plaintiffs' factual

allegations.  *Cf. Vtech Holdings Ltd. v. PriceWaterhouseCoopers, LLP*, No. 03 Civ. 1413, 2003

WL 21756623, *1 (S.D.N.Y. July 30, 2003) (dismissing pursuant to Rule 8(a) the plaintiffs'

lengthy and conclusory pleadings that merely repeated a series of stock phrases that conveyed no

real meaning).

      Additionally, to the extent that Plaintiffs appear to make a *respondeat superior* argument,

suggesting that Defendant Finch Pruyn is vicariously liable for the misrepresentations and

omissions of its agents Defendants Benway and Levandosky, *see* Complaint at ¶¶ 166-69, the

Court rejects this claim.  *Respondeat superior* liability does not exist under ERISA's fiduciary

liability scheme.  *See In re AOL Time Warner*, 2005 WL 563166, at *4 n.5 ("[T]here is no reason

to recognize an implied ERISA cause of action under the doctrine of *respondeat superior* . . .

since the statute's carefully crafted and detailed enforcement scheme provides 'strong evidence

that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate

expressly.'" (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)); *Crowly ex rel.

Corning, Inc., Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222, 228-29 (W.D.N.Y. 2002).  The

Court, therefore, grants summary judgment to Defendants on this ground.

### 3. Plaintiffs' claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne based on their knowledge of a co-fiduciary breach

Plaintiffs appear to assert two theories of co-fiduciary liability in this case. One theory is that Defendant Retirement Board, its members Defendants Manny and Lavigne, and Defendant Finch Pruyn are liable for failure to monitor Defendants Benway and Levandosky in the performance of their duties. Their second theory is that Defendant Finch Pruyn is liable because it knew about the breaches and failed to take reasonable steps to remedy them. These theories derive from subsections two and three of 29 U.S.C. § 1105(a), which identifies circumstances giving rise to co-fiduciary liability:

> [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a); s*ee also Liss v. Smith*, 991 F. Supp. 278, 310-11 (S.D.N.Y. 1998) (citations omitted).

Defendants assail Plaintiffs' second theory of co-fiduciary liability, arguing that their complaint is deficient to the extent that it lacks factual allegations that Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne had knowledge of the misrepresentations and omissions of their co-fiduciaries. As an initial matter, Plaintiffs do not allege in their complaint that Defendant Retirement Board or its members, Defendants Manny and Lavigne, had knowledge of a co-fiduciary breach. They only allege that Defendant Finch Pruyn had knowledge of the breach. *See* Complaint at ¶¶ 191-92.

-17-

Moreover, with regard to Defendant Finch Pruyn, Plaintiffs do not allege any facts giving rise to an inference that it had knowledge of the breach. *See Herrington v. Household Int'l, Inc.*, No. 02 C 8257, 2004 WL 719355, *10 (N.D. Ill. Mar. 31, 2004) (dismissing the plaintiffs' co-fiduciary claims because their pleadings contained only a conclusory allegation of the defendants' knowledge with no operative facts sufficient to give the defendants notice of the claims). Plaintiffs may not rely on the theory that Defendant Finch Pruyn acquired knowledge of the breaches by virtue of Defendant Benway's and Defendant Levandosky's knowledge. In ERISA co-fiduciary cases, an agent's knowledge cannot be imputed to the principal. As stated, *respondeat superior* liability is incongruent with ERISA's fiduciary liability scheme. *See In re AOL Time Warner*, 2005 WL 563166, at *4 n.5. To allow knowledge to be imputed pursuant to traditional agency theory would likewise circumvent this scheme by imposing virtually strict liability on principals for breaches of their agents, thus extending co-fiduciary liability beyond the strictly-delimited categories of 29 U.S.C. § 1105(a). Since Plaintiffs have not offered any other facts from which the Court can infer knowledge, the Court grants summary judgment to Defendants on this ground.

**D.      Defendants' status as fiduciaries**

A person is a fiduciary under ERISA to the extent that he

> (i) [ ] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [ ] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [ ] has any discretionary authority or discretionary responsibility in the

administration of such plan. . . .

29 U.S.C. § 1002(21)(A).

"'Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted.  Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised.'"  *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006) (quotation and other citation omitted); *see also Katzenberg v. Lazzari*, No. 04 CV 5100, 2007 WL 1017645, *8 (E.D.N.Y. Mar. 30, 2007).  Under subsection one, an individual only has fiduciary status "to the extent" that he exercises the discretionary authority; therefore, he "may be an ERISA fiduciary with respect to certain matters but not others. . . ."  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987).  Similarly, under subsection three, an individual who is specifically assigned discretionary authority is only a fiduciary with respect to those matters for which he was granted that authority.  *See Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, No. 5:03-CV-1060, 2006 WL 2934391, *11 (N.D.N.Y. Oct. 12, 2006).

First, there is a genuine issue of fact concerning who was *granted* discretionary authority over Plan matters pursuant to subsection three.  The Plan Agreement lists Defendant Retirement Board as the initial plan administrator.  *See* Levandosky Aff. at Exhibit "A."  However, Defendants assert that, on August 30, 1997, Defendant Finch Pruyn's board of directors passed a resolution delegating this authority to Defendants Benway and Levandosky and naming them as

new plan administrators and named fiduciaries.[12]  *See id.* at ¶ 5.  On the other hand, Plaintiffs

refer to an office memorandum from Defendant Carota, dated August 21, 2002, which states that

"the responsibility for carrying out all phases of administration of [the retirement plans] is

assigned to the *Retirement Boards*."  *See* Affidavit of John E. Levandosky, sworn to January 9,

2006, at Exhibit "4" (emphasis added).  The remaining issue, therefore, is whether the

discretionary authority initially assigned to Defendant Retirement Board was properly delegated

to Defendants Benway and Levandosky, or others, in accordance with ERISA § 405(a), 29

U.S.C. § 1105(c), and the relevant Plan provisions.

Second, there is a genuine issue of fact concerning whether, regardless of who was

*granted* discretionary authority, which of the Defendants actually *exercised* discretionary

authority over the matters relevant to this case pursuant to 29 U.S.C. § 1002(21)(A)(i).  Since

discovery has not yet taken place and since the fiduciary-status determination is particularly fact-

intensive, the Court denies Defendants' motion for summary judgment on this issue and grants

the parties an opportunity to explore the fiduciary-status issue through further discovery.  *See*

*Agway*, 2006 WL 2934391, at *11 ("The determination of whether a party is a plan fiduciary is a

'flexible and fact-intensive concept', and thus not particularly well-suited for disposition on a

Rule 12(b)(6) motion." (citation omitted)); *Am. Med. Ass'n v. United HealthCare Corp.*, No. 00

Civ. 2800, 2007 WL 1771498, *24 (S.D.N.Y. June 18, 2007) (denying the defendant's summary

judgment motion because the court could not determine whether it had discretionary authority

---

[12] Defendants state that the board of directors' resolution, dated August 30, 1997, is
attached to the complaint at exhibit "A."  However, there are no exhibits attached to the
complaint, and the Court cannot find this document among the exhibits attached to other
submissions.

based only on "Stage One" discovery conducted up to that point).

**E.      Plaintiffs' non-fiduciary-liability claim against Defendant Finch Pruyn**

Plaintiffs state in their complaint that, "[r]egardless of whether Finch Pruyn is determined to be a fiduciary . . . [it] is liable for the violations of ERISA described herein."  *See* Complaint at ¶ 193.  They accompany this legal conclusion with the factual allegation that "Finch Pruyn had knowledge of the breaches of fiduciary duty described above and/or had knowledge of the circumstances that rendered the transactions involving Finch Pruyn, Plaintiffs, and the Plan unlawful."  *See id.* at ¶ 192.  Even assuming that their pleadings were sufficient with respect to these allegations, Plaintiffs fail to state a claim for which this Court can grant relief.

Under some circumstances, a non-fiduciary can be held liable for knowing participation in the breach of a fiduciary duty.  *See Agway*, 2006 WL 2934391, at *25 (citations omitted).  However, Plaintiffs' complaint alleges only that Defendant Finch Pruyn had *knowledge* of the alleged breaches.  Since Plaintiffs do not claim that Defendant Finch Pruyn *participated* in Defendant Benway's and Defendant Levandosky's alleged misrepresentations and omissions, the Court grants summary judgment to Defendants on this claim.

**F.      Remaining issues**

The remaining claims for resolution at trial are (1) Plaintiffs' material misrepresentation and omission claims against Defendants Levandosky and Benway and (2) Plaintiffs' co-fiduciary failure-to-monitor claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne.  However, there is also an issue whether Plaintiffs are entitled to the equitable relief that

-21-

they request.

In their complaint, Plaintiffs request rescission of their retirements and resignations, reinstatement with back pay, and restoration of their Plan benefits.  They additionally seek attorney's fees.  Relief under ERISA § 502(a)(3) is limited to equitable remedies.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56 (1993).  Although reinstatement and back pay are equitable remedies, *see Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 153 (E.D.N.Y. 1996), it is unclear whether the Court can order Plaintiffs' reinstatement and back pay in this case.  Plaintiffs terminated their employment while they were *unreinstated* strikers.  Therefore, Plaintiffs must show that, *but for* their retirements and resignations, they would have been reinstated as employees of Defendant Finch Pruyn.  *Cf. Carrero v. N.Y. City Hous. Auth.*, No. 86 CIV. 1061, 1990 WL 104007, *8 (S.D.N.Y. July 13, 1990) ("An award of back pay or an order of reinstatement is appropriate [in a Title VII case] if the discrimination is the 'but for' cause of the disputed employment action, from which it follows that a showing of [the plaintiff's] non-qualification for the jobs in question would bar such relief." (citation omitted)); *Truck Drivers, Chauffeurs & Helpers, Local Union 100 v. Liquid Carbonic Corp*, 562 F. Supp 825 (S.D. Ohio 1983) (holding that an employer complied with an arbitration award directing it to reinstate an employee where the employer reinstated the employee but then placed him on layoff based on his lack of seniority because the employer returned him to the position he would have had *but for* the wrongful termination); 18 U.S.C. § 1514A(c)(2) (providing that whistleblowers who have been retaliated against in violation of the Sarbanes-Oxley Act are entitled to "reinstatement with the same seniority status that the employee would have had, but for the discrimination").  Otherwise, reinstatement with full back pay and restored benefits would put Plaintiffs in a better position

-22-

than they were in before they decided to retire or resign.  Reinstatement may also unfairly

displace current employees.  *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385

(4th Cir. 2001) (opining that reinstatement under ERISA § 502(a)(3) would be inappropriate if it

would require the removal of a current employee (citation omitted)).

 If Plaintiffs cannot demonstrate that they would have been reinstated after the strike but

for their termination, there may not be an equitable remedy available to them except, perhaps, to

restore their rightful places on the unreinstated strikers list.  Moreover, even if Plaintiffs were

reinstated with back pay and restored benefits, they would have to return the Plan benefits that

they received upon termination.  *See id.*  Finally, since there is no *respondeat superior* liability

under ERISA, it is unclear whether the individual Defendants in this case have the authority to

reinstate plaintiffs to their former employment.  *Cf. Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir.

1993) (stating that, in a § 1983 case, the equitable remedy of reinstatement can only be obtained

against a defendant in his official, not individual, capacity)*; Rao v. N.Y. City Health & Hosps.

Corp.*, 882 F. Supp. 321, 330-31 (S.D.N.Y. 1995).  Accordingly, the Court orders that, before the

parties conduct discovery in this case, they must brief the Court on the issue of remedies.


### IV. CONCLUSION

 After carefully considering the file in this matter, the parties' submissions and the

applicable law, and for the reasons stated herein, the Court hereby

 **ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to

Plaintiffs' claims against Defendant Carota; and the Court further

 **ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to

Plaintiffs' breach-of-fiduciary-duty claims based on material misrepresentations and omissions against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' breach-of-fiduciary-duty claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne based on their knowledge of a co-fiduciary's breach and failure to take reasonable remedial steps; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' breach-of-fiduciary-duty claims based on non-fiduciary liability against Defendant Finch Pruyn; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' ERISA § 510 claims against all Defendants; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' breach-of-fiduciary-duty claims based on material misrepresentation and omission against Defendant Levandosky; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Desrosiers' breach-of-fiduciary-duty claim based on material misrepresentation and omission against Defendant Benway;[13] and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' breach-of-fiduciary-duty claims against Defendants Retirement Board, Finch Pruyn, Manny, and Lavigne based on their failure to monitor co-fiduciaries; and the Court further

---

[13] As noted, only Plaintiff Desrosiers asserted a breach-of-fiduciary-duty claim based on material representation and omission against Defendant Benway.

-24-

**ORDERS** that, **within twenty (20) days** of the date of this Order, the parties shall brief the Court on the issue of remedies, *see* Part III.F. *supra*; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Treece for discovery on the issue of Defendants' fiduciary status, *see* Part III.D. *supra*; and the Court further

**ORDERS** that, **within ten (10) days** after discovery is completed on that issue, the parties shall file a status report with the Court.

**IT IS SO ORDERED.**

Dated: May 13, 2008
      Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge