**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES C. HARRIS; THOMAS CLIFFORD;**
**DAVID R. DESROSIERS; RICHARD M. EVENS;**
**WILLIAM S. MCLAUGHLIN, JR.; THOMAS M.**
**MURPHY; JAMES POWERS; GARY PREVOST;**
**ROBERT ROZELL; TERRY L. VANARNUM, JR.;**
**KEVIN WHIBLE; PAUL J. WOLFE; DAVID J.**
**COWLES; and JOHN W. WEAVER,**

                              **Plaintiffs,**

              **v.**                                        **1:05-CV-951**
                                                            **(FJS/RFT)**

**FINCH, PRUYN & COMPANY, INC.;**
**THE RETIREMENT BOARD OF FINCH,**
**PRUYN & COMPANY, INC.; RICHARD J.**
**CAROTA; DAVID P. MANNY; LAURIER J.**
**LAVIGNE; JEFFREY W. BENWAY; and**
**JOHN E. LEVANDOSKY,**

                              **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**BLITMAN & KING, LLP**                  **STEPHANIE A. MINER, ESQ.**
Franklin Center, Suite 300               **JAMES R. LAVAUTE, ESQ.**
443 North Franklin Street                **DANIEL E. KORNFELD, ESQ.**
Syracuse, New York 13204-1415
Attorneys for Plaintiffs

**COUCH WHITE, LLP**                     **MICHAEL T. WALLENDER, ESQ.**
540 Broadway
Albany, New York 12201
Attorneys for Defendants

**OGLETREE, DEAKINS, NASH,**        **PETER D. POST, ESQ.**
**SMOAK & STEWART, P.C.**
Four Gateway Center, Suite 400
444 Liberty Avenue
Pittsburgh, Pennsylvania 15222-1237
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs are fourteen former employees of Defendant Finch, Pruyn & Company, Inc. ("Finch Pruyn") who participated in the company's Hourly 401K Plan ("Plan").  They filed this complaint on July 28, 2005, asserting a panoply of breach-of-fiduciary-duty claims against Defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs' remaining claims in this action are (1) their ERISA § 510 claims against all Defendants; (2) their breach-of-fiduciary-duty claims based on material misrepresentation and omission against Defendant Levandosky; (3) Plaintiff Desrosiers' breach-of-fiduciary-duty claim based on material misrepresentation and omission against Defendant Benway; and (4) their breach-of-fiduciary-duty claims against Defendants Retirement Board, Finch Pruyn, Manny, Lavigne, and Finch Paper, LLC ("Finch Paper")[1] based on their failure to monitor co-fiduciaries. They seek equitable relief: to rescind their resignations and retirements and to be reinstated with full back pay and restored benefits.  They additionally seek reasonable attorney's fees and costs.

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Pursuant to a Memorandum-Decision and Order,

---

[1] Plaintiffs amended their complaint to include Finch Paper as an additional defendant on July 1, 2008; however, this motion predates Finch Paper's inclusion in this case.

dated May 13, 2008, the Court granted in part and denied in part Defendants' motion for summary judgment.  Additionally, the Court directed the parties to brief the issue of remedies, which constitutes the subject of this decision.

## II. BACKGROUND

Each Plaintiff participated in the Plan, which Defendant Finch Pruyn created to allow its hourly-paid employees to make regular contributions to a retirement benefits account in amounts as high as fifteen percent of their annual earnings.  *See* Complaint at ¶ 36; Affidavit of John E. Levandosky, sworn to November 3, 2005 ("Levandosky Aff."), at ¶ 9.  Under the Plan, participants were entitled to a distribution of their account balance upon retirement or resignation.  *See* Defendants' Memorandum of Law, dated November 4, 2005, at 1-2. Alternatively, participants could obtain money from their accounts without terminating their employment with Defendant Finch Pruyn by two methods.  First, they could borrow up to fifty percent of their account balance for any reason.  *See* Defendants' Statement of Material Facts at ¶ 78.  Second, they could make "hardship withdrawals," which were available for certain financial needs such as medical care, post-secondary-education tuition, and housing payments. *See id.* at ¶¶ 80-81.  Defendants claim that they informed Plaintiffs about the various features of the Plan, including the withdrawal options, at a number of informal meetings held before the Plan became effective on October 1, 1997.  *See id.* at ¶¶ 73-74.  On January 28, 1998, Defendants issued each Plaintiff a summary plan description ("SPD"), which contained information about Plan provisions in question-and-answer format.  *See* Levandosky Aff. at Exhibit "D."

In June 2001, Plaintiffs participated in a strike against Defendant Finch Pruyn.  *See* Plaintiffs' Memorandum of Law, dated January 31, 2006, at 1.  Defendant Finch Pruyn hired replacement workers during the strike and, as a result, when the strike ended in November 2001, there were not enough vacancies to reinstate all of the strikers.  *See id.* at 1-2.  Plaintiffs were among those who were not reinstated.  *See id.* at 2.  Beginning in November 2001 and throughout 2002,[2] Plaintiffs contacted Defendant John Levandosky, Defendant Finch Pruyn's benefits manager, requesting information about their Plan accounts.  *See* Complaint at ¶¶ 43-113.  According to Plaintiffs, Defendant Levandosky told some of them that they would have to resign or retire in order to access money from their Plan accounts.  *See id.* at ¶¶ 49, 54, 59, 73, 78, 83, 88, 93, 103, 110.  Plaintiffs assert that, in conversations with others, Defendant Levandosky failed to inform them about the possibility of accessing money through loans and hardship withdrawals.  *See id.* at ¶¶ 44, 64, 69, 98.  Plaintiff Desrosiers also contacted personnel director Jeffrey Benway about his Plan account.  *See id.* at ¶ 53.  He claims that Defendant Benway told him he must submit a letter of resignation in order to access the funds in his Plan account.  *See id.* at ¶¶ 54-55.  Plaintiffs state that they did not learn that Defendants' statements about the Plan were false until they attended a union meeting on April 6, 2005.  *See* Plaintiffs' Memorandum of Law, dated January 31, 2006, at 13.

In June 2007, Defendant Finch Pruyn sold its paper-making assets to a newly-formed entity, Finch Paper, which currently operates Defendant Finch Pruyn's former plant and employs many of Defendant Finch Pruyn's former employees.  *See* Dkt. No. 39 at 2.

---

[2] Plaintiff Evens, however, did not seek Defendant Levandosky's advice about the Plan until January 2003.  *See* Complaint at ¶ 58.

## III. DISCUSSION

**A.      Legal remedies under ERISA § 502(a)(2)**

In their supplemental brief, Plaintiffs contend that, in addition to equitable remedies under ERISA § 502(a)(3), they are entitled to legal remedies under ERISA § 502(a)(2) for breach of fiduciary duty and interference with attainment of ERISA rights.  *See* Dkt. No. 38 at 3. Section 502(a)(2) is not limited to equitable remedies;[3] therefore, if the Court were to apply that provision in this case, Plaintiffs would be entitled to a wider range of remedies, including compensatory damages.[4]  Plaintiffs rely on the recently-decided case, *LaRue v. De Wolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008), for the proposition that an ERISA plaintiff may take advantage of § 502(a)(2) even if he is suing only to recover for his individual plan account, rather than on behalf of the plan as a whole.  *See* Dkt. No. 38 at 4.

ERISA § 502(a)(2) provides that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409."  29 U.S.C. § 1132(a)(2).  Section 409 states, in pertinent part,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make

---

[3] Section 502(a)(3), on which the Court based its discussion of possible remedies in its May 13, 2008 Memorandum-Decision and Order, is limited to equitable remedies.

[4] The Supreme Court left unanswered the question whether compensatory or punitive damages are available to a plan under § 502(a)(2).  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 n.12 (1985).  Several lower courts, however, have since held that compensatory damages are available under § 502(a)(2).  *See, e.g., Landwehr v. DuPree*, 72 F.3d 726, 737 (9th Cir. 1995); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1026-27 (S.D. Ohio 2006); *Gruber v. Hubbard Bert Karle Weber, Inc.*, 675 F. Supp. 281, 284 (W.D. Pa. 1987).

> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of
> such fiduciary.

29 U.S.C. § 1109(a).

The Supreme Court first interpreted these provisions in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).  In that case, the Court found that plan participants could only recover for ERISA violations pursuant to § 502(a)(2) if they were suing on behalf of the plan as a whole and recovery would inure to the benefit of the overall plan account, not simply the plaintiffs' individual plan accounts.  The Court reasoned that references in § 502(a)(2) to "the plan" show "that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."  *Id.* at 142 (footnote omitted).  The Court reaffirmed *Russell* in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), in which it held that a lawsuit where plan participants alleged that their former employer made intentional misrepresentations that induced them to terminate their employment and benefits plans could not be based on § 502(a)(2) because it was individual in nature.  *See id.* at 515.

The Court later limited *Russell*'s holding  in *LaRue*.  The plaintiff in *LaRue* sued his employer for failing to follow his investment instructions concerning his individual 401(k) plan.  Since the plaintiff's individual account was affected but not others', the principal issue before the Court was whether the individual nature of his claim prevented his recovery under § 502(a)(2).  The Court held that it did not, distinguishing *Russell* as applying only to

-6-

defined-benefits plans, whereas the plan under consideration in *LaRue* was a defined-contribution plan.[5]  *See id.* at 1025.  Since defined-contribution plans are not constructed around a single, central plan, the Court held that a fiduciary breach that diminishes only individual plan assets may trigger recovery under § 502(a)(2) consistent with the drafters' purpose.

Plaintiffs believe that *LaRue*'s focus away from injury to the "entire plan" as the touchstone for recovery under § 502(a)(2) permits them to assert a § 502(a)(2) claim in this case; however, it does not.  *LaRue* merely replaced the rule that § 502(a)(2) remedies are only available when the action is on behalf of the "entire plan" with the rule that § 502(a)(2) remedies are available whenever the action is on behalf of *any* plan to recover losses to that plan.  *See id.* at 1029 (Thomas, J. concurring in the judgment).  It did not expand § 502(a)(2) to allow individual claims that are not based on losses to plan assets.  In fact, the Court explicitly warned that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries . . . ."  *See id.* at 1026.  Plaintiffs' alleged injuries — being induced to retire or resign — were solely individual in nature.  *Cf. Helzer v. Blue Cross Blue Shield of Ga.*, No. 06-cv-0228-RPM, 2008 WL 2385894, *2 (D. Colo. June 9, 2008) (holding that, where the plaintiff's husband went ahead with surgery in reliance on a plan representative's false statement that she would be covered by her health plan after her employer terminated her, *LaRue* did not permit the plaintiff to recover under § 502(a)(2) because the action was individual in nature).  Plaintiffs do not allege any injury to their Plan accounts.  In fact, they received full distributions from their Plan accounts upon retirement or resignation.

---

[5] The Plan under consideration in this case is a defined-contribution plan.

Accordingly, the Court holds that Plaintiffs cannot recover legal remedies under § 502(a)(2) and grants summary judgment to Defendants on this ground.

**B.      Equitable remedies under ERISA § 502(a)(3)**

Since Plaintiffs cannot recover legal remedies under § 502(a)(2), they are only entitled to equitable remedies under § 502(a)(3).  *See Varity*, 516 U.S. at 515.  ERISA § 502(a)(3) allows a participant, beneficiary, or fiduciary to sue "to enjoin any act or practice which violates" ERISA or "to obtain other appropriate equitable relief."[6]  29 U.S.C. 1132(a)(3).  "Equitable relief" means "'those categories of relief that were *typically* available in equity . . . .'"  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting [*Mertens v. Hewitt Assocs.*, 508 U.S. 248,] 256, 113 S. Ct. 2063 [(1993)]).

***1. Rescission and reinstatement***

Plaintiffs contend that they are entitled to rescission of their elections to resign or retire and receive distributions from their Plan accounts and reinstatement to the positions and benefits to which they would have been entitled had they not retired or resigned.  As an initial matter, rescission and reinstatement are traditional equitable remedies recoverable under § 502(a)(3).  *See Griggs v. E.I. DuPont De Nemours & Co.*, 385 F.3d 440, 441-42

---

[6] In addition to providing remedies for breach of fiduciary duty, § 502(a)(3) also provides the exclusive remedies for Plaintiffs' ERISA § 510 claims.  *See Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 390 (S.D.N.Y. 2006) (citation omitted).  Therefore, Plaintiffs only remaining claims are for equitable relief.

(4th Cir. 2004) ("*Griggs II*"); *Verizon Employee Benefits Comm. v. Frawley*, No. 3:05-CV-2105-P, 2006 WL 3438614, *5 (N.D. Tex. Nov. 15, 2006).  Neither party contests this issue.[7]  Defendants, however, contend that these remedies are not justified under the circumstances of this case.  Thus, they do not argue that they are not *equitable* but that they are not *appropriate*.  *See* 29 U.S.C. § 1132(a)(3) (providing for "appropriate equitable relief").

Plaintiffs first request rescission of their elections to retire or resign and reinstatement of their employment.  Reinstatement of employment is only appropriate against the employer or an agent of the employer that possesses discretionary authority over employment decisions.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995) ("Clearly, backpay and reinstatement are equitable remedies which are most appropriately provided by employers, defined in the traditional sense of the word." (citation omitted)), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) (stating that, in a § 1983 case, the equitable remedy of reinstatement can only be obtained against a defendant in his official, not individual, capacity); *Dunn v. N.J. Transit Corp.*, 681 F. Supp. 246, 251 (D.N.J. 1987) ("[T]he request for the equitable remedy of reinstatement, although not barred under the law, is barred by the realities of the situation.  This type of relief is unavailable from the individual defendants because none has the authority to reinstate plaintiff to his former job.").  Therefore, Plaintiffs are not entitled to reinstatement to their former positions unless

---

[7] Nor do Defendants contest Plaintiffs' assertion that they would have been reinstated to active employment but for their retirements and resignations.

they prevail directly against their employer or a supervisor with employment decision-making authority.  However, even this, by itself, would not entitle Plaintiffs to reinstatement of their employment in this case.

Finch Paper now owns and operates the business that Plaintiffs' former employer, Defendant Finch Pruyn, used to own.  Since Defendant Finch Pruyn sold its assets, it no longer has the authority to reinstate Plaintiffs to their former positions.  Therefore, Plaintiffs must demonstrate that Finch Paper, which did not purchase the company until June 2007, well after the alleged misconduct occurred, is liable to them under ERISA.  They attempt to do this by alleging that Finch Paper is liable as a successor to Defendant Finch Pruyn.  *See* Amended Complaint at ¶¶ 210-15.

A number of courts have applied the "alter ego" doctrine in ERISA recovery-of-benefits cases.  *See Hamilton v. Carell*, 243 F.3d 992, 1003-04 (6th Cir. 2001) (holding that it is appropriate to look beyond the corporate form "'where exacting obeisance to the corporate form is inconsistent with ERISA's remedial purposes'" (quotation omitted)); *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998) (citations omitted).  At least one other court has indicated that the doctrine is also available in ERISA breach-of-fiduciary-duty cases.  *See Sullivan ex rel. Pointers, Cleaners & Caulkers Welfare Pension & Annuity Funds v. West N.Y. Residential, Inc.*, No. 01-CV-7847, 2003 WL 21056888, *2 (E.D.N.Y. Mar. 5, 2003) (holding that a corporate defendant's alter ego could be added as a defendant in an ERISA claim for breach of fiduciary duty).  This comports with the notion that ERISA's founding purpose, to safeguard

employees' benefits, often runs counter to traditional reverence for the corporate form.[8]  *See*
*Alman v. Danin*, 901 F.2d 1, 3-4 (1st Cir. 1986).  Thus, Plaintiffs may prove that Finch
Paper is an "alter ego" of Defendant Finch Pruyn by establishing that the entities share some
of the following common factors: (1) management, (2) business purpose, (3) operations, (4)
equipment, (5) customers, (6) supervision and ownership, and (7) anti-union sentiment.  *See*
*Newspaper Guild of N.Y., Local No. 3 of Newspaper Guild, AFL-CIO v. N.L.R.B.*, 261 F.3d
291, 294 (2d Cir. 2001) (citing *Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10, 11-12
(2d Cir. 1984)).

However, even if Plaintiffs can establish that Finch Paper is an alter ego of
Defendant Finch Pruyn, the Court must judge the propriety of reinstatement by balancing the
equities involved.  This may depend, among other factors, on (1) Plaintiffs' current ability to
work in their former positions, (2) the amount of time that they have been out of the work
force, and (3) whether their reinstatement would displace current employees.  *See Adams v.*
*The Brinks Co.*, 261 F. App'x 583, 596-97 (4th Cir. 2008); *Griggs v. E.I. DuPont de*

---

[8] It is true that § 409(a) limits recovery to actions against fiduciaries.  *See* 29 U.S.C.
§ 1109(a).  Moreover, § 409(b) provides that "[n]o fiduciary shall be liable with respect to a
breach of fiduciary duty under this subchapter if such breach was committed before he became a
fiduciary or after he ceased to be a fiduciary."  29 U.S.C. § 1109(b); *see also Watson v.*
*Deaconess Waltham Hosp.*, 298 F.3d 102, 110-11 (1st Cir. 2002).  Likewise, § 510 limits
recovery to actions against persons who interfere with ERISA rights.  *See* 29 U.S.C. § 1140.
Courts are powerless to create causes of action that ERISA's detailed enforcement scheme does
not expressly provide.  *See Mertens*, 508 U.S. at 254 (quoting [*Russell*,] 473 U.S. at 146-47, 105
S. Ct. at 3092); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 322 (2d Cir. 2003) (recognizing
that the Supreme Court has repeatedly rejected "judicially-created, 'interstitial' remedies").
However, if a successor corporation is an "alter ego" of its predecessor, it is, in essence, the same
entity.  Therefore, the "alter ego" doctrine escapes the prohibition against judicially-created
remedies because it merely assists in determining who is a fiduciary within the meaning of
§ 409(a) or an interfering "person" within the meaning of § 510.  It does not create a separate
cause of action.

*Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001) ("*Griggs I*").  The record before the Court is devoid of facts concerning Finch Paper's corporate structure, relationship with Defendant Finch Pruyn, work force, and available positions.  Nor does the record provide any information about Plaintiffs' current ability to perform their former jobs.  Moreover, Finch Paper was not a party to this action when Defendants filed this motion for summary judgment and did not have an opportunity to respond to Defendants' supplemental brief on the issue of remedies.  Accordingly, the Court finds that there are genuine issues of material fact for trial concerning the reinstatement of Plaintiffs' employment and denies Defendants' motion for summary judgment on this issue.

Plaintiffs further request rescission of their elections to receive lump sum distributions of their Plan assets and reinstatement of their Plan accounts.  The prevailing opinion among courts that have considered this issue is that reinstatement of benefits constitutes equitable relief even if it requires a defendant to pay a sum of money.  *See Adams*, 261 F. App'x at 596-97; *Griggs II*, 385 F.3d at 446; *Frawley*, 2006 WL 3438614, at *4.  Additionally, this form of equitable relief is appropriate even if reinstatement of employment is not available.  *See Adams*, 261 F. App'x at 597; *Griggs II*, 385 F.3d at 443. However, as stated above, a remedy under § 502(a)(3) must be appropriate as well as equitable.  Thus, the Court will have to consider the equities of the situation to fashion an appropriate remedy and determine, among other things, whether Plaintiffs will have to restore all or part of the benefits they received upon retirement or resignation.  *See Griggs II*, 385 F.3d at 448-49.  Since the facts before the Court are not sufficient to complete this analysis, genuine issues of material fact remain concerning the reinstatement of Plaintiffs'

benefits.  Accordingly, the Court denies Defendants' motion for summary judgment on this issue.

### 2. Back pay and lost benefits

Plaintiffs contend that, in addition to rescission and reinstatement, they are entitled to back pay and lost benefits.[9]  There is a circuit split on the issue of back pay and lost benefits in ERISA § 503(a)(3) cases.  The Third and Tenth Circuits examine back pay and lost benefits separately from rescission and reinstatement.  *See generally Eichorn v. AT & T Corp.*, 484 F.3d 644, 655-56 (3d Cir. 2007); *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1253 (10th Cir. 2004).  They have held that, unlike rescission and reinstatement, back pay and lost benefits are legal remedies because they are measured according to the employee's loss rather than the employer's gain.  *See Millsap*, 368 F.3d at 1253 (citing Dobbs, *Law of Remedies* § 6.10(5) at 227 n.15) (other citations omitted); *Eichorn*, 484 F.3d at 656 (citing *Millsap*, 368 F.3d at 1253) (other citations omitted).  Such make-whole remedies are compensatory and, therefore, not traditionally equitable.[10]  *See Millsap*, 368

---

[9] Plaintiffs ask the Court to "reserve judgment on this matter until, at the least, discovery has concluded in this matter."  *See* Dkt. No. 38 at 8.  "At that time," Plaintiffs assert, "the issue will still be ripe and there is the likelihood that there would be more judicial guidance."  Since the Court is not aware of any imminent decision by the Supreme Court or the Second Circuit that would provide the "judicial guidance" that Plaintiffs seek, it declines to reserve decision on this issue.

[10] It is true that, in other areas of labor and employment law, Congress has made back pay part of the equitable remedy of reinstatement.  *See* 42 U.S.C. § 2000e-5(g)(1) (stating that, in Title VII cases, "the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate"); 29 U.S.C. § 160(c) (stating

(continued...)

F.3d at 1254. Additionally, although the Third Circuit did not have occasion to consider the

issue, the Tenth Circuit has held that there is an exception to this general rule where

monetary relief is incidental to or intertwined with reinstatement. *See id.* at 1255 (citation

omitted); *accord Talkin v. Deluxe Corp.*, No. 05-2305-CM, 2007 WL 1469648, *12 (D.

Kan. May 18, 2007) (citation omitted); *Michaelis v. Deluxe Fin. Servs., Inc.*, 446 F. Supp.

2d 1227, 1230 (D. Kan. 2006).

The Fourth Circuit, on the other hand, conflates the issues of rescission and

reinstatement with lost benefits. *See generally Adams*, 261 F. App'x at 596-97; *Griggs II*,

385 F.3d at 441-42; *accord Frawley*, 2006 WL 3438614, at *4-*5. Under this line of cases,

reinstatement of benefits does not simply amount to a return to an employee's pre-election

position; it amounts to compensation for unearned benefits that would have been earned

over the years. In *Adams*, for example, the court held that

> it does appear equitable and appropriate for the court to order that
> [the plaintiff] be allowed to rescind his election for early retirement
> benefits and to reinstate him to the benefits he would be entitled to
> under the [benefits plan] *if he had continued to work until his
> normal retirement date . . . .*

*Adams*, 261 F. App'x at 597 (emphasis added).

The Court finds the reasoning of the Third and Tenth Circuits persuasive and,

---

[10](...continued)

that "the Board . . . [may] take such affirmative action including reinstatement of employees with
or without backpay, as will effectuate the policies of the NLRA"). However, the Court in *Great-
West* held that Title VII's remedies have no bearing on ERISA because their provisions differ
significantly. *See Great-West*, 534 U.S. at 218 n.4. Specifically, the Court stated that it would
not treat back pay as equitable under ERISA merely because the circuit courts interpreting Title
VII treated back pay as equitable under 42 U.S.C. § 2000e-5(g)(1), which explicitly makes back
pay part of an equitable remedy. *See id.*; *accord Millsap*, 368 F.3d at 1258-59.

therefore, will consider back pay and lost benefits separately from rescission and reinstatement.  This reflects the better-supported view that, although reinstatement is traditionally equitable, back pay is compensatory in purpose and effect and, therefore, legal in nature.[11]

Since the Court finds that back pay and lost benefits are not equitable remedies, it must decide whether the back pay and lost benefits that Plaintiffs seek are incidental to their claims for reinstatement of employment and benefits.[12]  *See Millsap*, 368 F.3d at 1255 (citing [*Chauffeurs, Teamsters and Helpers, Local No. 391 v.*] *Terry*, 494 U.S. [558,] 570-71, 110 S. Ct. 1339 [(1990)]); 2 Joseph Story, *Commentaries on Equity Jurisprudence* 124-25 (13th ed. 1886) ("Wherever compensation or damages are incidental to other relief as for instance, where a specific performance is decreed upon the application of either party, with an allowance to be made for any deficiency as to the quantity, quality, or description of the property, or for any delay in performing the contract, there it seems clear that the jurisdiction properly attaches in equity, for it flows and is inseparable from the proper relief." (footnote omitted)); Josiah W. Smith, *A Manual of Equity Jurisprudence for Practitioners and*

---

[11] Back pay and lost benefits may not always constitute legal relief.  In *Eichorn*, the court posited a scenario that the Supreme Court also suggested in *Varity*, in which lost benefits could be measured by an employer's gain rather than an employee's loss.  *See Eichorn*, 484 F.3d at 656.  For instance, if the employee earned the pay or benefits and the defendant failed to pay them, the back pay or lost benefits would be more akin to restitution.  Thus, they might be equitable in nature.  It is unclear whether such back pay or lost benefits would be subject to the rule in *Great-West* that requires that funds be traceable to specific property or proceeds.  *See Great-West*, 534 U.S. at 214.  The Court need not decide this question, in any event, because Plaintiffs do not contend that they earned wages or benefits that Defendants failed to pay.

[12] The *Millsap* court held that lost benefits are not intertwined with reinstatement under ERISA because § 502(a)(3) expressly separates equitable from legal relief.  *Millsap*, 368 F.3d at 1257.  The Court, therefore, need only examine the "incidental to" prong of this exception.

*Students* 406 (13th ed.1880) ("It would seem that prior to the stat. 21 & 22 Vict. c. 27, damages or compensation were decreed in favour of a plaintiff in Equity, *only as incident to other relief* . . . ." (emphasis added)).

A number of courts have determined what relief is "incidental" by examining the relative monetary values of the legal and equitable relief requested.  *See Millsap*, 368 F.3d at 1257 (holding that the plaintiffs' back pay claim, which potentially exceeded ninety million dollars, was not incidental to their request for reinstatement); *Michaelis*, 446 F. Supp. 2d 1230-31 (concluding that the amount of back pay and lost benefits that the plaintiff requested were not incidental because they accounted for greater than twenty-five per cent of the employment reinstatement value).  Additionally, courts have indicated that back pay and lost benefits are not incidental when there is no dependent relationship between them and the reinstatement — in other words, when the back pay and lost benefits are not "integral" to the remedy of reinstatement.  *See id.* at 1231; *Talkin*, 2007 WL 1469648, at *12.

In accord with these cases, the Court finds that, since Plaintiffs seek back pay and lost benefits for multiple years during which they did not work, their legal claims cannot be considered incidental to their claims for rescission and reinstatement.  In his *Commentaries on Equity Jurisprudence*, Justice Story examined the exception for legal claims incidental to equitable relief and stated, as an example, that it had multiple applications in cases of specific performance, a remedy traditionally equitable in nature.  First, a court could order a defaulting party to provide monetary damages in addition to specific performance to compensate for property that was diminished in value.  *See* Story, *supra*, at 124-25.  Second, a court could order damages for delays or transaction costs.  *See id.*; Restatement (Second)

of Contracts § 358, cmt. c ("In addition to any equitable relief granted, a court may also award damages or other relief.  Since an order seldom results in performance within the time the contract requires, damages for the delay will usually be appropriate.  A seller of land who cannot perform as agreed because of a deficiency in area or a defect in title may be ordered to transfer all that he can, with compensation for the resulting claim for partial breach. . . .").  The remedies that Plaintiffs seek in this case are inapposite to the compensatory damages typically allowed as incidental to equitable relief.  Unlike the specific performance paradigm, in which damages are simply an ancillary part of a prospective, injunctive remedy, back pay and lost benefits address past losses while reinstatement addresses future losses and the parties' continuing relationship.[13]  As such, back pay and lost benefits are different from reinstatement in purpose and effect.  Furthermore, unlike the damages incident to specific performance, back pay and lost benefits can exist independently from reinstatement.  Accordingly, the Court grants Defendants' motion for summary judgment on the issue of back pay and lost benefits.

### 3. Front pay

Defendants contend that Plaintiffs are not entitled to front pay because it is not an equitable remedy pursuant to § 502(a)(3).  *See* Dkt. No. 39 at 3 n.2.  It does not appear that Plaintiffs request front pay in their amended complaint or their supplemental briefs.  However, to the extent that they do request front pay in lieu of reinstatement, they are not

---

[13] "[S]pecific performance of a *past due* monetary obligation[ ] was not typically available in equity."  *Great-West*, 534 U.S. at 211.  Thus, courts of equity clearly distinguished between retrospective and prospective injunctive relief.

entitled to this remedy.  Payment of future unearned wages is compensatory in nature and could not be incidental to equitable relief.  Rather, front pay is essentially a replacement for equitable relief.  The Court finds no support for the proposition that front pay is an available remedy under § 502(a)(3).  Accordingly, the Court grants summary judgment to Defendants on this ground.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims for legal remedies under ERISA § 502(a)(2); and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims for back pay and lost benefits under ERISA § 502(a)(3); and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims for front pay under ERISA § 502(a)(3); and Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' claims for rescission and reinstatement under ERISA § 502(a)(3); and the Court further

**ORDERS** that, since Plaintiffs' only remaining claims are for rescission and reinstatement of their employment and Plan accounts and, since Defendant Finch Pruyn does not have the authority to reinstate them, Defendant Finch Pruyn is **DISMISSED** from this action.[14]

**IT IS SO ORDERED.**

Dated: August 26, 2008
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[14] As stated *supra*, only a party with discretion over hiring decisions may reinstate a plaintiff to his employment.  Likewise, only a party with discretion over the retirement plan may reinstate a plaintiff to his pre-election account.  Except for Defendant Finch Pruyn, which no longer operates the business that employed Plaintiffs and, therefore, no longer has the authority to reinstate them, the evidence is insufficient to determine which remaining Defendants have reinstatement authority.  Therefore, there are genuine issues of fact concerning the remaining Defendants.

Furthermore, after reviewing its May 13, 2008 Memorandum-Decision and Order, the Court finds that it is necessary to clarify its Order concerning Defendant Carota.  In that decision, the Court first dismissed all claims against Defendant Carota due to insufficient factual allegations.  The Court then denied Defendants' motion for summary judgment with regard to Plaintiffs' § 510 claims against all Defendants.  The Court now clarifies that its statement dismissing all claims against Defendant Carota includes Plaintiffs' § 510 claims.  Accordingly, the Court dismisses Defendant Carota as a party to this action.

-19-